COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DAVID NELSON, INDIVIDUALLY AND D/B/A COLLECTIVE CONTRACTING, A SOLE PROPRIETORSHIP; COLLECTIVE CONTRACTING, INC.; AND E. E. HOOD & SONS, INC., | § § § § § | No. 08-10-00222-CV Appeal from the 45th Judicial District Court |
| Appellants, | § | of Bexar County, Texas |
| v. | § | (TC# 2006-CI-18807) |
| VERNCO CONSTRUCTION, INC., | | |
| Appellee. | | |

## OPINION ON MOTION

Appellant E.E. Hood & Sons, Inc. (Hood) asks this Court to review and dissolve the trial court's Rule 24.2(d) order issued on March 5, 2012.[1] We grant the motion for review and vacate the trial court's March 5, 2012, temporary restraining order.

## BACKGROUND

*Factual and Procedural History*

After Vernco Construction, Inc. (Vernco) filed suit against Hood and others (the Vernco case), Hood's insurance company, American Home Assurance Company (American Home) failed to defend Hood in both the Vernco suit and a lawsuit involving the San Antonio Water Systems Board of Trustees, *et al.*, (the "SAWS" case). Hood then sued American Home (the Coverage case) for failing to provide litigation defense in the Vernco and SAWS cases.[2] In the Vernco case,

---

[1] As this case was transferred from our sister court in San Antonio, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3. Hood is one of three appellants and Vernco is appellee in the appeal pending before this Court.

[2] *E.E. Hood & Sons, Inc. v. American Home Insurance Company, and IBC Insurance Agency, Ltd.*, No.

a jury found in favor of Vernco and awarded damages against Hood in excess of $5,000,000.[3]

Judge Barbara Hanson Nellermoe entered judgment against Hood in the Vernco case on April 7, 2010. As a judgment debtor, Hood filed a supersedeas bond for $2,200,000, one-half of its net worth and the maximum permitted amount, pending its appeal before this Court. TEX. R. APP. P. 24.2(a)(1)(A).

In December 2010, American Home paid Hood approximately $566,000 to reimburse Hood for its defense costs in the Vernco case and noted that an October 2010 payment to Vernco in the amount of approximately $187,500 constituted the interest on those defense costs. In its letter accompanying the December 2010 payment, American Home stated that it was not waving any rights, arguments, or defenses to the coverage, extra-contractual or any other claims brought by Hood, and asserted its position that it owed no duty to defend or indemnify Hood for the claims made against it in the Vernco case. According to American Home, no basis existed for Hood to claim a right to indemnity for the judgment in the Vernco case because the only potential basis for coverage in that case, business disparagement, did not survive the jury's verdict and could not have caused Vernco's lost profits.

*Rule 11 Agreement and Coverage Case*

Upon learning of these payments in May 2011, Vernco intervened in the Coverage case and, arguing that the Vernco judgment formed a basis of Hood's claims against American Home and IBC Insurance agency, sought: (1) an injunction; (2) an order requiring further notice to Vernco of funds paid by American Home to Hood; and (3) to intercept or impound the funds for placement in the registry of the trial court. In June 2011, Vernco nonsuited its intervention and

---

2010-CI-10631 (45th Dist. Ct., Bexar County, Tex. Jul. 15, 2011).
[3] *Vernco Construction, Inc. v. David Nelson, et al.*, No. 2006-CI-18807 (45th Dist. Ct., Bexar County, Tex. April 7, 2010).

2

executed a Rule 11 agreement with Hood and American Home, wherein Hood and American Home agreed to notify Vernco's counsel "in writing of any future payment related to the coverage action at least five business days before such payment is made, with an explanation of what the payment represents (e.g., indemnity money or defense costs in the underlying SAWS or Vernco case[s])." TEX. R. CIV. P. 11. Vernco agreed that unless such payment was represented by Hood and American Home to be for the indemnification of Vernco's judgment against Hood, Vernco would not try to interfere with or to intercept such payment but may use the payment information for the purpose of evaluating Hood's financial condition and determining whether to seek an increase in Hood's appellate bond. On September 13, 2011, Judge Solomon Casseb, Jr. granted Hood's motion for partial summary judgment in the Coverage case, deciding that American Home breached its duty to defend Hood in the Vernco and SAWS lawsuits but expressly stating that "No ruling is made at this time regarding the right of indemnification on the Vernco case."

In accordance with the Rule 11 agreement, counsel for Hood, with approval of American Home's counsel, informed Vernco by letter dated February 28, 2012, that a $2,100,000 payment would be made by American Home to Hood on March 6, 2012, as partial consideration for the settlement reached in the Coverage case, and that another $2,100,000 payment would be made at a future date. The letter advised Vernco that:

> The $4,200,000 payable by American Home to E.E. Hood in consideration for the settlement consists of $444,000 for unpaid defense costs in *SAWS*, $1,662,500 for the settlement in *SAWS*, $325,000 for unpaid defense and appellate costs in *Vernco*, $1,420,000 for interest and consequential business losses to E.E. Hood, and $348,500 for E.E. Hood's attorneys' fees in the Coverage Lawsuit. There is no amount paid by American Home to E.E. Hood for indemnification of the *Vernco* Judgment, and there will be no further payments by American Home in connection with the *Vernco* Judgment.

3

In this regard, pursuant to the June 19, 2011 Rule 11 Agreement, you have agreed to not interfere or intercept the above payment which is not for the indemnification of the *Vernco* Judgment currently pending on appeal.

*Rule 24.2(d) Ex Parte Hearing and Order*

On March 5, 2012, Vernco filed a motion seeking post-judgment injunctive relief against Hood as well as post-judgment discovery. In its motion, Vernco prayed for: (1) a temporary restraining order "to preserve the status quo," (2) a hearing on the motion within 14 days after issuing an order granting the temporary injunctive relief, (3) an order enjoining Hood from dissipating or transferring any of its assets to avoid satisfaction of the final judgment in the Vernco case and enjoining Hood from dissipating or transferring any money or other assets that Hood has already received or would receive in the future in connection with the Coverage suit, (4) authorization to conduct expedited post-judgment discovery relevant to the motion to assist Vernco in preparing for the evidentiary hearing and to ensure Hood's compliance with the injunctive relief that the trial court may grant, and (5) all other legal and equitable relief to which Vernco is justly entitled.

That same day, the trial court conducted an *ex parte* hearing of which no record was made and issued an order which stated in relevant part:

> [T]he Court FINDS and CONCLUDES that it is likely – even probable – that, unless immediate injunctive relief is granted, Hood will *continue* to dissipate or transfer assets to avoid satisfaction of the Judgment in this case and cause Vernco, the Judgment Creditor, irreparable harm.
> Specifically, the Court FINDS and CONCLUDES that Hood is *likely* to dissipate or transfer assets that it has already received – or that it will receive in the future – in connection with [the Coverage Case].
> Therefore, the Court FINDS and CONCLUDES that pursuant to TEX. CIV. PRAC. & REM. CODE 52.006(e) and TEX. R. APP. P. 24.2(d), and based [upon] the evidence presented and the arguments of counsel, immediate injunctive relief should be GRANTED. It is, therefore
> ORDERED, ADJUDGED, and DECREED that [Hood is] ENJOINED, and

4

[is] directed to immediately CEASE and DESIST, from dissipating, transferring, spending, encumbering, or otherwise disbursing any of Hood's assets outside the normal course of Hood's business to avoid satisfaction of the Judgment, *without further order of this Court*.   Further, it is

ORDERED, ADJUDGED, and DECREED that [Hood is] specifically ENJOINED, and [is] directed to immediately CEASE and DESIST, from dissipating, transferring, spending, encumbering, or disbursing any money or other assets that Hood has already received – or that Hood receives in the future – in connection with the Coverage Case, *without further order of this Court*.   Further, it is

ORDERED, ADJUDGED, and DECREED that [Hood is] DIRECTED to place any and all funds or other assets that they have already received, or that they receive in the future, in connection with the Coverage Case into a separate interest-bearing Hood account, at a financial institution of Hood's choosing, provided that:  (1) such deposits shall at all times remain fully insured by the FDIC; (2) such funds and other assets shall not be commingled with any other funds or assets of Hood's; and (3) such funds or other assets shall not be disbursed, transferred, or withdrawn from such account *for any reason without further order of this Court*.   If any funds or other assets received by Hood from any insurer or paying party in connection with the Coverage Case are paid jointly to Hood and its attorneys, such funds may be received and maintained in the IOLTA account of Hood's attorney, but in no event shall any such funds or other assets be disbursed, transferred, or withdrawn from that IOLTA account *for any reason, without further order of this Court*.[4]   (Italics added). TEX. R. APP. P. 24.2(d); TEX. CIV. PRAC. & REM. CODE ANN.§ 52.006(e) (West 2008).

On the evening of March 5, 2012, Vernco served Hood with a copy of its motion and the trial court's temporary restraining order.

*Motion to Dissolve Rule 24.2(d) Order*

On March 7, 2012, Hood filed a motion to dissolve the trial court's temporary restraining order complaining of defects in both the order and the procedures preceding the order.   At the hearing on its motion, Hood complained that the settlement funds had been impounded without an

---

[4]  The order also contained a recital that Vernco had satisfactorily demonstrated to the trial court that advance notice of the Motion would have caused Vernco irreparable harm by giving Hood an opportunity to *further* dissipate or transfer its assets to avoid satisfaction of the final judgment before injunctive relief could be obtained.   In its order, the trial court also addressed citation and service upon Hood, granted Vernco permission to conduct post-judgment discovery relevant to the motion, including the deposition of "an officer of Hood without subpoena" and of its counsel, as well as Hood's compliance therewith, set Vernco's bond at $100 as security in support of the injunctive relief granted, and scheduled an evidentiary hearing for March 15, 2012.

evidentiary hearing and noted that while it had complied with the terms of the Rule 11 agreement, Vernco had not honored its terms and had convinced the trial court instead to impound the Coverage case settlement funds, which were not issued for indemnification of the Vernco case and which Vernco had agreed it would not pursue. Hood reiterated that there is no exception that permits a trial court to interfere with a judgment debtor's use of assets in the normal course of its business, and argued that Vernco had not made a prima facie showing that Hood's assets had been transferred or dissipated outside the normal course of business. The trial court's order, Hood argued, constituted an impermissible mandatory injunction and failed to preserve the status quo. Judge Nellermoe denied Hood's motion to dissolve the Rule 24.2(d) order issued on March 5, 2012.

*Motion for Review and Petition for Writ of Mandamus*

Hood filed a motion for review and, in the alternative, a petition for writ of mandamus seeking review of the trial court's Rule 24.2(d) order, along with an emergency motion for temporary relief in conjunction with its petition. TEX. R. APP. P. 24.2(d); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(e) (West 2008). We granted emergency temporary relief, staying both the Rule 24.2(d) order and the hearing scheduled for March 15, 2012, and filed Hood's motion as a petition for writ of mandamus, which we later dismissed and re-filed as a Rule 24.4(a) motion for review. TEX. R. APP. P. 24.4(a). Pending our review of Hood's Rule 24.4(a) motion, we subsequently stayed the trial court's Rule 24.2(d) order and hearing.

**DISCUSSION**

In its Rule 24.4(a) motion for review, Hood asserts both that the trial court abused its discretion and that the March 5, 2012 post-judgment order is void, and asks this Court to review

and vacate or dissolve the trial court's Rule 24.2(d) order.   TEX. R. APP. P. 24.2(d), 24.4.

*Standard of Review*

We review a trial court's order enjoining a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment under an abuse of discretion standard.  *Emeritus Corporation v. Ofczarzak*, 198 S.W.3d 222, 225 (Tex.App. – San Antonio 2006, no pet.).   The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles.  *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985); *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982).   To determine the trial court's guiding rules and principles when acting on a judgment creditor's request to enjoin a judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment, we must look to Rule 24.2 and relevant decisions of the courts of this state and the United States.   *See Downer*, 701 S.W.2d at 242; TEX. R. APP. P. 24.2(d).   A trial court also abuses its discretion by failing to correctly analyze or apply the law.   *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992).

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).   To obtain a common-law, non-statutory temporary injunction, an applicant must plead and prove three elements:   (1) a cause of action against a defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.   *Butnaru*, 84 S.W.3d at 204, 210.   The first two elements are necessarily met when a judgment has been rendered against a defendant.  *Emeritus*, 198 S.W.3d at 227.   The San Antonio Court of Appeals has determined that in a post-judgment context, the third element is supplanted by Rule 24.2(d) and Section 52.006(e), which provide that the trial court may enjoin the judgment debtor from

7

dissipating or transferring assets to avoid satisfaction of the judgment, with the trial court's authority limited by the Legislature. TEX. R. APP. P. 24.2(d); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(e) (West 2008); *Emeritus*, 198 S.W.3d at 227. Thus, our sister court concludes, "the applicable standard is a factual matter requiring the trial court to determine whether the judgment debtor is likely to dissipate or transfer its assets to avoid satisfaction of the judgment. [And] [t]he trial court abuses its discretion in ordering a post-judgment injunction if the only reasonable decision that could be drawn from the evidence is that the judgment debtor would not dissipate or transfer its assets." *Emeritus*, 198 S.W.3d at 227.

*Applicable Law*

Although Rule 24.2(d) and Section 52.006(e) provide that a trial court may enjoin a judgment debtor from dissipating and transferring assets to avoid satisfaction of a judgment, the trial court is restricted from making any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business. TEX. R. APP. P. 24.2(d); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(e) (West 2008).

Rule 24.4(a) provides that a party may seek review of a trial court's ruling by motion filed in a court of appeals with jurisdiction or potential jurisdiction over the appeal from the judgment in the case. TEX. R. APP. P. 24.4(a). Upon the filing of a motion seeking review, we are permitted to review the sufficiency or excessiveness of the amount of the security but, when reviewing a money judgment, we may not modify the amount of security to exceed the limits imposed by Rule 24.2(a)(1), which restricts the amount of bond, deposit, or security to the lesser of fifty-percent of the judgment debtor's net worth or $25,000,000. TEX. R. APP. P. 24.2(a)(1)(A),(B); TEX. R. APP. P. 24.4(a)(1).

8

A trial court issuing a pre-judgment temporary restraining order is required to: "(1) state why the order was granted without notice if it is granted ex parte . . . ; (2) state the reasons for the issuance of the order by defining the injury and describing why it is irreparable . . . ; (3) state the date the order expires and set a hearing on a temporary injunction . . . ; and (4) set a bond[.]" TEX. R. CIV. P. 680, 684; *In re Office of the Atty. Gen.*, 257 S.W.3d 695, 697 (Tex. 2008). To satisfy the second required component of its post-judgment temporary restraining order in this case, the trial court was required to include in its order a finding that the judgment debtor is likely to dissipate or transfer its assets to avoid satisfaction of the judgment. *See Emeritus*, 198 S.W.3d at 227. A temporary restraining order that fails to fulfill these requirements is void. *In re Office of the Atty. Gen.*, 257 S.W.3d at 697.

*Application*

It is uncontroverted that Hood filed a supersedeas bond of $2,200,000, one-half the amount of its net worth of $4,400,000, and the maximum permitted based upon Hood's net worth, at the time it filed its bond. Hood's notification to Vernco about the Coverage case settlement complies with the terms of the Rule 11 agreement and was intended to provide information that could be used by Vernco as a basis to seek an increase of the supersedeas bond, while Vernco's motion for post-judgment relief and post-judgment discovery as to the coverage action payment is contrary to the Rule 11 agreement. We have before us no evidence that Vernco has filed a motion to increase bond, and the trial court's Rule 24.2(d) order does not address the role of the Rule 11 agreement or Hood's notification to Vernco under its terms in relation thereto. The status quo existing between the parties as set out in the Rule 11 agreement is not preserved but rather nullified by the Court's Rule 24.2(d) order.

9

In its Rule 24.2(d) order, the trial court also found and concluded that Hood is *likely* to dissipate or transfer assets already received or to be received in connection with the Coverage case settlement pending in the same court. Again, these findings ignore the Rule 11 agreement Vernco had that unless such payment to Hood was represented to be for the indemnification of Vernco's judgment, Vernco would not try to interfere or to intercept such payment.

In *Emeritus*, as here, the judgment debtor's motion to dissolve the post-judgment injunction was denied. However, the facts before us differ considerably from the case considered by the San Antonio Court of Appeals in *Emeritus*. *Emeritus*, 198 S.W.3d at 227-28. Importantly, in *Emeritus*, there was no bond, there was evidence of the judgment debtor's negative net worth, and bond was only posted in an effort to resist discovery. *Id*. The *Emeritus* record contained evidence which showed that the trial court was aware of a number of actions by Emeritus including misrepresentations to the court, the imposition of sanctions against Emeritus, and the trial court's findings that Emeritus, rather than its defense counsel, had violated the trial court's discovery orders as well as violations of discovery rules. *Id*. Although the record in *Emeritus* contained no direct evidence that Emeritus had actually dissipated or transferred assets, the San Antonio Court of Appeals determined upon the record before it that it was unable to "conclude that the trial court abused its discretion in determining that a likelihood existed that Emeritus would dissipate or transfer its assets to avoid satisfaction of the judgment." *Id*. at 228. Most significantly, we note that the language in the *Emeritus* order is the precise language of Rule 24.2(d) and does not exceed the court's authority as the order before us does.

Here, there is no record of the *ex parte* hearing. We are unable to determine whether there was any direct or indirect evidence presented to the trial court which may support a finding that

10

Hood has already transferred any assets or funds outside the normal course of business, and the trial court's order fails to make such findings. TEX. R. APP. P. 24.2(a). The trial court's order does not explicitly find that Hood has dissipated or transferred assets to avoid satisfaction of the judgment but instead concludes that "Hood will *continue* to dissipate or transfer assets to avoid satisfaction of the Judgment in this case . . . ." While this determination implies that Hood has already dissipated or transferred assets to avoid satisfaction of the judgment, such an implication hardly rises to the level of a finding based on a factual determination needed to support a conclusion that Hood would act to avoid satisfaction of the judgment. Citing the *Emeritus* standard of review, we have previously found that in the absence of evidence that a judgment debtor *has* dissipated or transferred its assets to avoid satisfaction of a judgment, there is no evidence presented to the trial court that the judgment debtor would do so in the future. *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 314 (Tex.App. – El Paso 2009, no pet.).

## CONCLUSION

The trial court abused its discretion in that its Rule 24.2(d) order did not serve to preserve the status quo and exceeded the authority set out in Rule 24.2(d). TEX. R. APP. P. 24.2(d). Additionally, the trial court's order of March 5, 2012, interferes with Hood's use, transfer, conveyance, and dissipation of assets in the normal course of business in violation of Rule 24.2(d) and Section 52.006(e). TEX. R. APP. P. 24.2(d); TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(e) (West 2008). Accordingly, we grant the motion for review and vacate the trial court's March 5, 2012, temporary restraining order.

PER CURIAM

May 2, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

11