**Petition for Writ of Mandamus Granted and Opinion filed August 23, 2018.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-18-00649-CV**

---

**IN RE SYLVESTER TURNER, MAYOR, AND DAVE MARTIN, HOUSTON CITY COUNCIL MEMBER, Relators**

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-50136**

---

# O P I N I O N

On August 3, 2018, relators Sylvester Turner, Mayor of the City of Houston, and Dave Martin, Houston City Council Member,[1] filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. In the petition, relators ask this court to compel the Honorable Kyle Carter, serving as ancillary judge for the 152nd District Court, in Harris County, Texas, to vacate his temporary restraining

---

[1] Relators are the only defendants in the underlying proceeding and are sued in their official capacities only.

order ("TRO") restraining relators, and those acting in concert with them, from displaying on municipal websites or other municipally funded media platforms any audio, video, or transcribed versions of the City's Budget and Fiscal Affairs Committee meeting held on July 26, 2018 (the "July 26 meeting").

We conclude that the TRO constitutes an abuse of discretion and conditionally grant relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, the Houston Professional Firefighters Association IAFF-Local 341 (the "Firefighters Association") gathered petition signatures to place a proposed city charter amendment before Houston's voters to require parity in the compensation provided to Houston Firefighters and the compensation provided to Houston Police Officers (the "Charter Amendment"). The petitions were submitted to the City Secretary for review. On May 3, 2018, the City Secretary certified to the Mayor and City Council that the petitions had the requisite number of signatures.

The City Council scheduled a council vote for August 8, 2018, to place the Charter Amendment on the ballot.

The Texas Local Government Code requires that the City publish in the local newspaper, in advance of an election on a proposed charter amendment, a copy of the proposed charter amendment, and "an estimate of the anticipated fiscal impact to the municipality if the proposed amendment is approved at the election." *See* Tex. Loc. Gov't Code § 9.004(c)(1)–(2). For a charter amendment to appear on the November 2018 general election ballot, the first such publication must occur, at the latest, by mid-October 2018. *See id.* § 9.004(c)(3).

Relators' petition states that the City's Budget and Fiscal Affairs Committee scheduled a public meeting for July 26, 2018, in anticipation of the publication of the estimated fiscal impact of the Charter Amendment and the City Council's upcoming vote that would place the Charter Amendment on either the November 2018 or 2019 ballot.

When the July 26 meeting began, Dave Martin, the Chairman of the Committee, stated that the purpose of the meeting was to discuss the financial implication of the proposed Charter Amendment. The City's Director of Finance Tantri Emo and Houston's Fire Chief Samuel Peña jointly presented a PowerPoint on the Charter Amendment's potential financial impact to the City and the Houston Fire Department. The Greater Houston Partnership also spoke at the meeting. The Firefighters Association was invited to make a presentation at the meeting but declined. However, the Firefighters Association's lawyer spoke during the public comment portion of the meeting. Afterwards, a video of the meeting was posted on the City's website.

On July 30, 2018, the Firefighters Association filed in Harris County district court a Verified Original Petition, Application for Temporary Restraining Order and Request for Temporary Injunction and Permanent Injunction, asserting that posting the July 26 meeting video on the City's website violated the Texas Election Code, and that the Firefighters Association therefore was entitled to an injunction barring the video's continued availability for public viewing on the website.

After hearing the Firefighters Association's request for a TRO on July 30 and 31, the ancillary judge signed a TRO restraining relators from displaying on municipal websites or other municipally funded media platforms any audio, video, or transcribed versions of the July 26 meeting.

## MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy by ordinary appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). We review the trial court's legal conclusions with limited deference. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The relator must establish that the trial court could reasonably have reached only one decision. *Id.*

To obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). It logically follows that if the record establishes that an applicant cannot show a probable right to the relief sought, then the applicant is not entitled to a temporary restraining order. Here, the trial court's TRO was predicated on its finding that the Firefighters Association showed a substantial likelihood of a violation of the Texas Election Code. As discussed below, the record does not support that finding.

## ANALYSIS

### A. Relevant Authority

Under section 273.081 of the Texas Election Code, "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled

4

to appropriate injunctive relief to prevent the violation from continuing or occurring." Tex. Elec. Code § 273.081.

Here, the Firefighters Association alleges that relators violated section 255.003 of the Election Code, which prohibits an officer or employee of a political subdivision from knowingly spending public funds for political advertising. Section 255.003 provides, in relevant part:

> (a) An officer or employee of a political subdivision may not knowingly spend or authorize the spending of public funds for political advertising.
>
> (b) Subsection (a) does not apply to a communication that factually describes the purposes of a measure if the communication does not advocate passage or defeat of the measure.
>
> (b-1) An officer or employee of a political subdivision may not spend or authorize the spending of public funds for a communication describing a measure if the communication contains information that:
>
> (1) the officer or employee knows is false; and
>
> (2) is sufficiently substantial and important as to be reasonably likely to influence a voter to vote for or against the measure.
>
> (c) A person who violates Subsection (a) or (b-1) commits an offense. An offense under this section is a Class A misdemeanor.

*Id.* § 255.003. "Political Advertising" includes a communication supporting or opposing a measure that appears on an Internet website. *See id.* § 251.001(16). "Measure" means a question or proposal submitted in an election for an expression of the voters' will and includes the circulation and submission of a petition to determine whether a question or proposal is required to be submitted in an election for an expression of the voters' will. *Id.* § 251.001(19).

5

Both relators and the Firefighters Association argue that our court should be guided by Ethics Advisory Opinion No. 456, which provides in relevant part:

APPLICATION OF SECTION 255.003 OF THE ELECTION CODE TO COMMENTS MADE BY CITY COUNCIL MEMBERS AT A PUBLIC MEETING THAT IS BROADCAST OVER A PUBLIC ACCESS TELEVISION CHANNEL

Ethics Advisory Opinion No. 456
(AOR-510)
July 16, 2004

The Texas Ethics Commission has been asked about the application of section 255.003 of the Election Code to statements by city council members at a city council meeting that is recorded and broadcast over a public access television channel.

. . .

In our opinion, section 255.003 was not intended to inhibit discussion of matters pending before a governmental body. When a city council holds a meeting to discuss whether to place an issue before the voters, council members and members of the public are likely to voice opinions about the issue. We do not interpret section 255.003 to prohibit the city from broadcasting a tape of such a meeting if the broadcast is in keeping with the city's regular practice of broadcasting meetings. In that situation, city resources would not be used "for" political advertising even if an incidental effect of broadcasting the tape would be to broadcast statements supporting or opposing a ballot measure.

It is not possible, however, to state that comments by city council members at a recorded public meeting could never give rise to a violation of section 255.003 because we can imagine a situation in which one or more city council members might arrange a discussion of a matter not pending before the city council with the hope that broadcasts of the discussion would influence the outcome of an election. . . .

6

Tex. Ethics Comm'n Op. No. 456 (2004).

## B. Abuse of Discretion

The Firefighters Association contends that statements opposing the Charter Amendment were allegedly made at the July 26 meeting and that those statements constitute "political advertising." Therefore, according to the Firefighters Association, making the July 26 meeting video available for public viewing on the City's website violates Election Code section 255.003 because public funds are being used "for political advertising." We conclude the ancillary judge misapplied the law by finding that the Firefighters Association showed a substantial likelihood of a violation of Election Code section 255.003.

The proposed Charter Amendment has been pending before the City Council since the petitions and the Charter Amendment were submitted to the City Secretary on July 17, 2017. The City Secretary certified to the Mayor and City Council that the petitions had the requisite number of signatures on May 3, 2018. Two matters already pending before the City Council at the time of the July 26 meeting were (1) a vote scheduled for August 8, 2018, on whether to place the Charter Amendment on the ballot and (2) the requirement to publish the estimate of the fiscal impact of the Charter Amendment in the local newspaper in advance of the election on the proposed Charter Amendment.

The City's Budget and Fiscal Affairs Committee scheduled the July 26 public meeting to obtain information regarding the fiscal impact of the proposed Charter Amendment. The fiscal impact of the Charter Amendment is relevant to whether voters and Council Members may oppose or support the Charter Amendment. So, it was not unreasonable or unexpected that statements tending to indicate support for, or opposition to, the Charter Amendment might be voiced at the meeting. Such statements, and the broadcast thereof, are specifically

7

contemplated by Ethics Advisory Opinion No. 456, which concludes that such public discussion generally does not violate section 255.003 of the Election Code. Relators offered evidence that it is a regular practice of the Committee to post videos, audio, and/or transcripts of its meetings on the City's website.

We agree with Ethics Advisory Opinion No. 456 that: (1) section 255.003 was not intended to inhibit discussion of matters pending before a governmental body; (2) when a city council holds a meeting to discuss pending matters attendant to whether to place an issue before voters, section 255.003 does not prohibit the city from posting a video of such a meeting on its website when, as here, doing so is in keeping with the city's regular practice; and (3) in this situation, when the pending issue of the Charter Amendment's fiscal impact was relevant to whether it should be supported or opposed, public funds were not being used for political advertising by making the meeting video publicly available, even though an incidental effect of posting the video on the City's website may be to re-publish statements supporting or opposing the Charter Amendment. *See* Tex. Ethics Comm'n Op. No. 456 (2004).

The second part of Ethics Advisory Opinion No. 456 recognizes the foreseeability of a potential section 255.003 violation in certain circumstances —such as when one or more city council members arrange a discussion of a matter *not pending before the city council* with the hope that broadcasts of the discussion would influence the outcome of an election. *See id.* But that situation is not present here. Rather, a vote to place the Charter Amendment on the ballot and an evaluation of the fiscal impact of the Charter Amendment were pending before the City Council; the statements and discussion at the meeting related to the pending matters.

8

Accordingly, we conclude that the ancillary judge erred in finding that the Firefighters Association showed a substantial likelihood of a violation of the Election Code, and therefore, the judge abused his discretion by issuing the TRO.

## C. No Adequate Remedy by Appeal

In *In re Office of Attorney General*, , the Texas Supreme Court granted mandamus relief from a temporary restraining order because of "the unavailability of appeal and the gravity of interests at issue in this case." 257 S.W.3d 695, 698 (Tex. 2008) (orig. proceeding) (per curiam). Because relators may not appeal the TRO and this case involves important matters of public concern which are time sensitive, we conclude that an appeal after any temporary injunction would not provide relators an adequate remedy.

## CONCLUSION

For the above reasons, we conditionally grant the petition for writ of mandamus, and direct the trial court to vacate the TRO. The writ of mandamus shall issue only if the trial court fails to do so.

/s/     Ken Wise
        Justice

Panel consists of Justices Boyce, Wise, and Jewell.