

# NUMBER 13-22-00510-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE COUNTY OF HIDALGO, HIDALGO COUNTY ELECTIONS DEPARTMENT, HILDA A. SALINAS, INTERIM ELECTIONS ADMINISTRATOR AND EVERARDO VILLARREAL, IN BOTH HIS OFFICIAL CAPACITY AS HIDALGO COUNTY PRECINCT 3 COUNTY COMMISSIONER AND INDIVIDUAL CAPACITY

---

## On Petition for Writ of Mandamus.

---

# OPINION

## Before Chief Justice Contreras and Justices Benavides and Tijerina
## Opinion by Justice Tijerina[1]

On October 21, 2022, the County of Hidalgo, the Hidalgo County Elections Department, Hilda A. Salinas as the Interim Elections Administrator, and Everardo Villarreal in both his official capacity as Hidalgo County Precinct 3 Commissioner and his

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

individual capacity (relators), filed a petition for writ of mandamus in this Court. Relators assert through multiple issues that the trial court[2] abused its discretion by issuing a temporary restraining order[3] requiring relators "to immediately cease and desist from proceeding with the early voting elections starting on October 24, 2022, and the November 8, 2022 general election" unless relators open the Peñitas Public Library as an additional polling location.

"The right to vote is fundamental, as it preserves all other rights." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 12 (Tex. 2011). We are reluctant to render a decision in this case which would prevent the citizens of Peñitas from having access to a polling place within their city limits. Nonetheless, the separation of powers doctrine and the rules of civil procedure require us to conclude that the trial court's temporary restraining order cannot stand. Accordingly, we conditionally grant the petition for writ of mandamus.[4]

## I.  BACKGROUND

In January 2022, relators submitted a request to use the John F. Kennedy Elementary School in Peñitas, Texas, as a polling place for the 2022 election cycle. That request was denied. On August 18, 2022, relators timely issued the Notice of General

---

[2] This original proceeding arises from trial court cause number C-4049-22-A in the 92nd District Court of Hidalgo County, Texas, and the respondent is the Honorable Rogelio Valdez, sitting by assignment. *See* TEX. R. APP. P. 52.2.

[3] The temporary restraining order states that it was heard by the trial court on October 20, 2022, and it provides that it was "SIGNED and ENTERED on "October, 2022 at 4:30 p.m." The order thus fails to be "endorsed with the date and hour of issuance" as required by Texas Rule of Civil Procedure 680. *See* TEX. R. CIV. P. 680. We note that the docket sheet for this trial court cause number indicates that the temporary restraining order was signed on October 21, 2022.

[4] As noted by Peñitas, the petition for writ of mandamus failed to include a certification. *See* TEX. R. APP. P. 52.3(j). However, relators subsequently filed a certification in accordance with the appellate rules, and thus Peñitas's complaint has been addressed.

Election for voters in Hidalgo County, in accordance with the August 22, 2022 deadline to do so, which included a list of polling places for the election as required by the election code. *See, e.g.*, TEX. ELEC. CODE ANN. § 4.003(a) (prescribing deadlines by which authorities must provide notice of an election); *id.* § 4.004(a)(2) (requiring the notice of election to include "the location of each polling place"). This list did not include a polling place in Peñitas.

In the middle of the afternoon on August 22, 2022, La Joya Independent School District (La Joya ISD) submitted a request to relators that Peñitas Public Library serve as an early voting polling location. On August 25, 2022, Agua Special Utility District (Agua SUD) provided a similar request. Relators informed these parties that their requests were not timely.

On Thursday, October 20, 2022, the real parties in interest, the City of Peñitas, a home-rule municipality located in Hidalgo County, Texas, and Ramiro Loya, in his official capacity as Mayor of the City of Peñitas and in his individual capacity (collectively Peñitas), filed suit against relators seeking declaratory relief, a temporary restraining order, and temporary and permanent injunctive relief. Peñitas alleged that relators' conduct in refusing the requests to use the Peñitas Public Library as a polling place violated the Texas Election Code, the Voting Rights Act, and the Texas and United States Constitutions. Peñitas alleged that it had been "adversely affected and harmed" by relators' conduct, "which will disenfranchise eligible Texas citizens, specifically Peñitas vote[r]s in the upcoming election this November 8, 2022." Peñitas sought ex parte relief on the stated grounds that "[t]here is not enough time to serve notice on [relators] and to

3

hold a hearing on this application."

On October 20, 2022, the trial court held a hearing on Peñitas's request for relief. Relators were not present. Having heard Peñitas's claims, the trial court granted ex parte relief to Peñitas in the form of a temporary restraining order. The trial court therein ordered relators: (1) "to immediately cease and desist from proceeding with the early voting elections starting on October 24, 2022, and the November 8, 2022 general election without opening the Pe[ñ]itas Public Library polling location"; (2) "to immediately post a Notice of the Election that includes a list of Election Day and [e]arly voting polling locations to the Hidalgo County Election Department's website no later than Friday, October 21, 2022[,] at 7:00 a.m. and that list of polling locations shall include the City of Peñitas Public Library polling location"; and (3) "to open the City of Pe[ñ]itas Public Library polling location for the entire early voting period and General Election day as [o]rdered by La Joya ISD and Agua SUD." The temporary restraining order provided that its terms would expire on further order of the trial court or fourteen days from the date of its entry.

On Friday, October 21, 2022, relators filed this petition for writ of mandamus. Through six issues with sub-issues, relators contend that the trial court abused its discretion by granting the temporary restraining order and that they lack an adequate remedy at law. We have reorganized and restated relators' issues for the sake of clarity. As restated, relators assert that the trial court's temporary restraining order should be set aside because: (1) it does not comply with Texas Rules of Civil Procedure 680, 683, and 684; (2) it violates Rule 2.6 of the "Local Rules of Hidalgo County, Texas District Courts"; (3) it violates Texas law and bypasses election laws; (4) it violates the separation of

4

powers doctrine; and (5) the trial court does not have subject matter jurisdiction because Peñitas lacks standing, and its claims are moot. By a sixth issue, relators further assert that they lack an adequate remedy by appeal to address these errors. Relators further filed a motion for emergency stay through which they requested that we stay the temporary restraining order at issue in this original proceeding.

By order issued on Sunday afternoon, October 23, 2022, we granted the motion for emergency stay and requested that Peñitas file a response to the petition for writ of mandamus and relators' request for emergency relief by 5:00 p.m. on Monday, October 24, 2022. Peñitas filed two motions for extension of time to file its response, its response, and a motion for leave to late-file its response. We grant Peñitas's motions and proceed to consider the merits of this original proceeding.

## II.    MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

5

### III.    TIMELINESS

Relators present two issues that generally concern the timeliness of Peñitas's claims for relief in the context of the election process. In their fourth issue, relators assert that the temporary restraining order is invalid because it violates the "separation of powers" doctrine, and in part of their fifth issue, relators assert that Peñitas's claims are moot. With regard to the separation of powers, relators contend that the temporary restraining order "effectively stops the general election" and assert that the judicial branch of state government cannot interfere with an election that is in progress. Relators further argue that Peñitas's claims are moot because absentee balloting has begun and early voting began on Monday, October 24, 2022. Relators contend that they "cannot comply with the applicable statutory and regulatory deadlines to place a polling location at [the Peñitas Public Library] because said deadlines have long since passed."

In contrast, Peñitas argues that its causes of action are not moot

> since the November 8, 2022 general election [has] yet to occur and the early voting extends beyond October 24, 2022[,] and runs through November 4, 2022[,] and the [reinstatement] of the temporary restraining order can be followed by the [r]elators moving voting machines" into the Pe[ñ]itas Public Library within 24 hours.

Peñitas further asserts that relators' arguments in fact support the opposite proposition—that relators' claims are moot, whereas Peñitas's claims are not.

The Texas Supreme Court has explained the separation of powers doctrine as follows:

> The principle of separation of powers is foundational for federal and state governments in this country and firmly embedded in our nation's history. The Texas Constitution mandates:

6

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.
>
> Exceptions to the constitutionally mandated separation of powers are never to be implied in the least; they must be "expressly permitted" by the Constitution itself.

*Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013) (quoting and discussing TEX. CONST. art. II, § 1) (footnote omitted). "It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process." *Blum v. Lanier*, 997 S.W.2d 259, 263 (Tex. 1999); *see City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 455 (Tex. App.—Beaumont 2016, no pet.). Thus, as a fundamental matter, "judicial power cannot be invoked to interfere with the election process once it has begun." *In re Lopez*, 593 S.W.3d 353, 357 (Tex. App.—Tyler 2018, orig. proceeding). In *Blum*, the supreme court held that although the voter had "no right to enjoin the scheduled election," the trial court had jurisdiction to issue an injunction forbidding the city from using misleading language on the ballot as long as the injunction did not operate to delay or cancel the called election. *Blum*, 997 S.W.3d at 263–64.

The separation of powers doctrine is related to mootness. *See Abbott v. Mex. Am. Leg. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex. 2022). A case is moot when a justiciable controversy does not exist between the parties or when the parties do not have a legally cognizable interest in the outcome. *See id.*; *Heckman v.*

7

*Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). Courts lack subject-matter jurisdiction to decide a moot controversy. *Tex. Dep't of Fam. & Protective Servs. v. N.J.*, 644 S.W.3d 189, 192 (Tex. 2022). In general, a challenge to the electoral process will be considered moot when the validity of the alleged error cannot be finally determined in time for the error to be corrected or, stated otherwise, for the requested task to be substantially accomplished by election officials. *See, e.g.*, *In re Uresti*, 377 S.W.3d 696, 696 (Tex. 2012) (orig. proceeding) (per curiam) ("Once an election begins, a challenge to the candidacy of an individual becomes moot."); *Polk v. Davidson*, 196 S.W.2d 632, 634 (Tex. 1946) ("[W]hen the time comes that the issues cannot be heard and a final judgment entered adjudging the validity or invalidity of the nominee's certificate so that absentee ballots can be printed and available to voters as and when required by statute, the contest is moot and must be dismissed."); *Skelton v. Yates*, 119 S.W.2d 91, 91–92 (Tex. 1938) (orig. proceeding) ("Under the law absentee balloting has begun," thus, "[t]he election therefore is already in progress, and no order which this court might enter could be effective at this late date to govern such election."); *Sterling v. Ferguson*, 53 S.W.2d 753, 761 (Tex. 1932) (per curiam) ("The courts generally follow the rule that where no date when the authority of a court or other body for exercising a special jurisdiction shall cease, then that it does cease when any judgment which might be entered by the court would become moot—that is to say, when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law."); *Salazar v. Gonzales*, 931 S.W.2d 59, 60 (Tex. App.—Corpus Christi–Edinburg 1996, no writ) ("An election contest becomes moot, and the issues no longer justiciable, when a final judgment

8

adjudging the validity or invalidity of a candidate's certificate of nomination is not entered in time for election officials to comply with the statutory deadlines for preparing and conducting the general election, or when absentee balloting has begun during the pendency of the appeal."); *see also Garmon v. Tolbert*, 614 S.W.3d 190, 194 (Tex. App.—Tyler 2020, pet. denied*); In re Nat'l Republican Cong. Comm.*, 608 S.W.3d 544, 547–48 (Tex. App.—Austin 2020, orig. proceeding).

The separation of powers doctrine and mootness considerations thus constrain a court's ability to act in certain situations. In this regard, the time constraints that apply to the election process present challenges for judicial review. The Texas Supreme Court recently described these challenges as follows:

> To begin, the executive and legislative branches of government are the primary managers of our state's elections. They, no less than the courts, are sworn to uphold the Constitution and the laws. Texas courts do not sit as general overseers of election processes; they sit only to resolve any concrete and justiciable disputes that may arise. A party with such a dispute certainly has access to judicial resolution. But for a court to resolve an election dispute, the court must receive the case early enough to order relief that would not disrupt the larger election.
>
> This Court, like the U.S. Supreme Court, therefore has repeatedly explained that invoking judicial authority in the election context requires unusual dispatch—the sort of speed not reasonably demanded of parties and lawyers when interests less compelling than our society's need for smooth and uninterrupted elections are at stake. Time is particularly of the essence if a lawsuit seeks judicial action that may prevent the election from happening on time. Like the courts themselves, all parties must minimize delays in this context. Avoidable delays, in particular, may be fatal to the courts' ability to proceed at all.
>
> Another corollary is likewise true: as the risk of judicial interference with an election rises, so does the duty of the party invoking judicial power to explain with precision how any relief will affect that election and the larger structure of our state's election machinery. At a bare minimum, a party who asks a court to take action that could disrupt the election calendar after the

9

election process has begun has the duty to explain the practical consequences of the requested judicial action. That explanation must contain sufficient detail to allow the Court to weigh the need for the requested relief against the burdens the relief would impose on the election process and on the rights of other Texans.

These principles are not novel. Courts at every level, including the U.S. Supreme Court and this Court, have declined to implement even "seemingly innocuous" alterations to election laws on the eve of an election, let alone after one has begun. *Democratic Nat'l Comm. v. Wis. State Legislature*, — U.S. —, 141 S. Ct. 28, 31, 208 L.Ed.2d 247 (2020) (Kavanaugh, J., concurring); *see In re Hotze*, 627 S.W.3d 642, 646 (2020) ("[C]ourt changes of election laws close in time to the election are strongly disfavored.") (quoting *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 567 (5th Cir. 2020)); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, — U.S. —, 140 S. Ct. 1205, 1207, 206 L.Ed.2d 452 (2020) (per curiam) (holding that a lower court errs when it changes election laws on the eve of the election without sufficient showing of constitutional burdens). All parties must move with maximum expedition so that the courts—which also must act quickly when properly called upon—do not themselves contribute to electoral confusion.

*In re Khanoyan*, 637 S.W.3d 762, 764–65 (Tex. 2022) (orig. proceeding) (footnotes omitted).

In this case, Peñitas filed its request for relief in the trial court on October 20, 2022, and the trial court issued the temporary restraining order at issue either that afternoon or on October 21, 2022. However, the relevant statutory deadlines under the election code had already passed before these events occurred. The election code states that, "[f]or an election to be held on a uniform election date, the election shall be ordered not later than the 78th day before election day." TEX. ELEC. CODE ANN. § 3.005. For this election cycle, that date was August 22, 2022. Further, the election code requires the election notice to include the location of each polling place. *See id.* §§ 4.004(a)(2), 85.004, 85.067.[5] On

---

[5] We note that the election code contemplates that the public notice of the branch voting schedule posted by the early voting clerk "may be amended after the beginning of early voting by personal

10

August 18, 2022, relators issued the Notice of General Election for voters in Hidalgo County, which included the list of polling places for the election, including the early voting locations.

Peñitas did not seek relief from the trial court until October 20, 2022, long after the relevant deadlines in the election code had passed and less than two business days before early voting was scheduled to begin. At this point, Peñitas's requested relief and the trial court's temporary restraining order interfered with the electoral process. *See Blum*, 997 S.W.2d at 263; *In re Lopez*, 593 S.W.3d at 357; *City of Cleveland*, 500 S.W.3d at 455. Stated otherwise, Peñitas did not ask for the Peñitas Public Library to be designated as a polling place in time for the election officials to comply with their statutory deadlines for preparing and conducting the general election. *See Salazar*, 931 S.W.2d at 60.

In this regard, Peñitas did not pursue its requested relief in a timely manner. Relators posted the required notices identifying the polling places on August 18, 2022, yet Peñitas waited two months before seeking relief in the trial court, and only requested relief on the eve of early voting. This avoidable delay is untenable given "our society's need for smooth and uninterrupted elections," and when time is "particularly of the essence." *In re Khanoyan*, 637 S.W.3d at 764. Peñitas failed to act with due diligence in

appearance to include notice of additional temporary branch polling place locations, dates, and hours, but any amendment must be made not later than the fifth day before the date the voting is scheduled to begin at the additional temporary branch." TEX. ELEC. CODE ANN. § 85.067(c). None of the parties here invoked that provision of the election code, and the trial court's order did not comply with its terms. Accordingly, we do not address it in the context of this case and express no opinion regarding its application to these facts.

11

requesting relief from the trial court, and that delay was fatal to the trial court's ability to provide the requested relief. *See id.*

Based on the foregoing, we sustain relators' fourth issue regarding the separation of powers and the part of relators' fifth issue regarding mootness.

## IV.    FORM AND SUBSTANCE OF THE TEMPORARY RESTRAINING ORDER

We ordinarily would not address relators' remaining issues that are related to the merits because they are not necessary to the disposition of this original proceeding. *See* TEX. R. APP. P. 47.1, 47.4. However, for the sake of clarity and completeness, and in our sole discretion, we also address relators' first issue in which they assert that the temporary restraining order constitutes an abuse of discretion because the order does not comply with Texas Rules of Civil Procedure 680, 683, and 684. *See* TEX. R. CIV. P. 680, 683, 684. Relators contend that the temporary injunction fails to comply with the rules of civil procedure because it does not explain why it was issued without notice, and it does not adequately explain the reasons for its issuance.

### A.    Introduction

Temporary restraining orders are subject to the requirements of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 680, 683, 684. These procedural requirements are mandatory, and an order granting a temporary restraining order that fails to meet these requirements is void. *See In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021) (orig. proceeding) (per curiam) (discussing Rule 683); *In re Office of Att'y Gen.*, 257 S.W.3d at 697 (discussing Rule 680); *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam) (discussing Rules 683 and 684); *see also InterFirst Bank San*

12

*Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam). The Texas Supreme Court has instructed us that these requirements must be "strictly" followed. *In re Luther*, 620 S.W.3d at 722; *InterFirst Bank San Felipe, N.A.*, 715 S.W.2d at 641.

In summary, a trial court issuing a temporary restraining order is required to: (1) state why the order was granted without notice if it is granted ex parte; (2) state the reasons for the issuance of the order by defining the injury and describing why it is irreparable; (3) state the date the order expires and set a hearing on a temporary injunction; and (4) set a bond. *See* TEX. R. CIV. P. 680, 683, 684; *In re Office of Att'y Gen.*, 257 S.W.3d at 697; *Nelson v. Vernco Const., Inc.*, 367 S.W.3d 516, 522 (Tex. App.—El Paso 2012, no pet.).

## B. Requirements for Restraining Order

Relators' claims concern the form of the temporary restraining order that was issued by the trial court and arise from the express, mandatory text of two rules. First, Texas Rule of Civil Procedure 680 provides that:

> No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice . . . .

TEX. R. CIV. P. 680. And Rule 683 states in part that "every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable

13

detail and not by reference to the complaint or other document, the act or acts sought to be restrained." *Id.* R. 683.

With regard to the "irreparable injury" description required by the rules, the temporary restraining order was required to "define the injury and state why it is irreparable and why the order was granted without notice," *id.* R. 680, and to be "specific in terms." *Id.* R. 683. The supreme court interprets the rules to require that every temporary restraining order must "set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 261 S.W.2d 549, 553 (Tex. 1953); *accord State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971) ("Under Rule 683 . . . it is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered."). This explanation may not be conclusory. *See Good Shepherd Hosp., Inc. v. Select Specialty Hosp.-Longview, Inc.*, 563 S.W.3d 923, 929 (Tex. App.—Texarkana 2018, no pet.); *In re Chaumette*, 456 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.). Further, the temporary restraining order must recite the facts on which the trial court relied in reaching its conclusion. *See Caniglio v. Woods*, 593 S.W.3d 856, 858 (Tex. App.—Texarkana 2019, no pet.); *El Tacaso, Inc.*, 356 S.W.3d at 744; *see also Conclusory*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based").

14

Relators contend that the temporary restraining order does not meet the foregoing requirements. First, relators argue that the temporary restraining order failed to explain or address "why the order was granted without notice" and thus fails to meet the mandatory requirement to do so contained in Texas Rule of Civil Procedure 680. *See* TEX. R. CIV. P. 680. In contrast, Peñitas asserts that relators' contention "has no basis in fact or law." Peñitas contends that it "conferred" with an attorney for the Hidalgo County District Attorney's Civil Division by telephone regarding its application for temporary relief on the date that it was filed and advised that attorney that he "could follow up with the Court if he wanted to weigh in on the ex parte request before the trial court considered or signed the temporary restraining order."

Peñitas offers no authority in support of its position that a telephone call constitutes adequate notice to a party that a pleading seeking ex parte relief has been filed and will be heard, and its arguments are not supported by the rules of civil procedure. Rule 21 of the Texas Rules of Civil Procedure requires pleadings to be "served on all other parties," and "[a]n application to the court for an order and notice of any hearing thereon, not presented during a hearing or trial, must be served upon all other parties not less than three days before the time specified for the hearing, unless otherwise provided by these rules or shortened by the court." *Id.* R. 21(a), (b). It is undisputed that relators were not served with Peñitas's pleadings or provided with the requisite notice for a hearing. *See id.* And, even if we were to conclude that the trial court shortened the requisite notice period, there is no indication in the record that relators were ever served with notice of that hearing. *See id.* Instead, Peñitas expressly proceeded with the hearing on an ex

15

parte basis. *See id.* Accordingly, the temporary restraining order was required to contain the necessary findings regarding notice. *See id.* R. 21, 680.[6] We conclude that the temporary restraining order was deficient in this regard.

Second, relators assert that the temporary restraining order does not specifically define the irreparable injury that Peñitas would suffer in the absence of relief. Here, the only part of the temporary restraining order that can be construed as setting forth the reasons for its issuance states that the temporary restraining order is necessary because otherwise relators "will commit the disenfranchisement of voters before notice and a hearing on Plaintiffs' Application for Temporary Injunction," and "Plaintiffs will suffer irreparable harm if [relators] are not restrained immediately because Plaintiffs will have no adequate remedy at law to grant Plaintiffs complete, final[,] and equal relief." Peñitas asserts that this recitation of harm is sufficient to meet the requirements of the rules.

---

[6] We note that one of relators' issues alleges that the temporary restraining order was invalid because it did not comply with Hidalgo County District Courts Local Rule 2.6. Rule 2.6 provides:

> Temporary Orders. Except in emergencies when the clerk's office is not open for business, no application for immediate or temporary relief shall be presented to the judge until it has been filed and assigned to a Court as provided in these rules. If the judge of the court to which such case is assigned is absent or is occupied with other matters, such application may be assigned by the Presiding Judge to any other judge, who may sit for the judge of the court to which the case is pending, and shall make all orders, writs and process returnable to that court. Hearings or applications for temporary injunctions, temporary receiverships, and the like shall be set in the court to which the case is assigned and that court shall be responsible for all proceedings thereafter. *All applications for ex-parte relief shall state whether or not, within the knowledge of the applicant, and his attorney, the opposing party is represented by counsel, and the name of such counsel.*

HIDALGO CNTY. (TEX.) DIST. CT. LOC. R. 2.6 (emphasis added). Peñitas's arguments regarding notice of the hearing would suggest that its application for a temporary restraining order could have, but did not, include this information. *See id.* Given our resolution of this petition for writ of mandamus, we need not further address this issue.

16

This explanation as to why Peñitas will suffer irreparable harm is conclusory and does not recite the facts on which the trial court relied in reaching its conclusion, and thus violates the requirements for a temporary restraining order. *See id.* R. 680, 683; *Good Shepherd Hosp., Inc.*, 563 S.W.3d at 929; *El Tacaso, Inc.*, 356 S.W.3d at 744. The statement that relators "will commit the disenfranchisement of voters" is not "specific in terms," does not explain why this alleged injury is irreparable, and is not supported by any factual allegations supporting this conclusion. *See* TEX. R. CIV. P. 680, 683. Further, the general statement that Peñitas will suffer irreparable harm for which it lacks an adequate remedy is insufficient. *See In re Chaumette*, 456 S.W.3d at 305 (collecting cases deeming this general statement insufficient). Thus, the temporary restraining order does not satisfy the mandatory rules governing the issuance of such an order. *See Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 374 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *In re Chaumette*, 456 S.W.3d at 305; *El Tacaso, Inc.*, 356 S.W.3d at 744–45; *City of Corpus Christi v. Friends of Coliseum*, 311 S.W.3d 706, 709 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.).

We conclude that the temporary restraining order fails to meet the mandatory procedural requirements of the Texas Rules of Civil Procedure, and it is consequently void. *See In re Luther*, 620 S.W.3d at 722; *In re Office of Att'y Gen.*, 257 S.W.3d at 697. We sustain relators' first issue.

## V. ADEQUACY OF A REMEDY BY APPEAL

Finally, in their sixth issue, relators contend that an appeal would be an inadequate remedy to correct the trial court's error in issuing the temporary restraining order. In

contrast, Peñitas asserts that "[r]elators could have sought a stay of the TRO, and/or requested an emergency hearing, and filed a Motion to Dissolve or Modify the TRO in the trial court." It further argues that relators have not shown that mandamus is necessary because "[r]elators present nothing to suggest that they are at risk of losing important substantive or procedural rights." *See, e.g.*, *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding) ("In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss.").

Mandamus review of a trial court's temporary restraining order is proper because such an order cannot be appealed; thus, the party against whom such injunctive relief is granted lacks an adequate remedy by appeal. *See In re Abbott*, 601 S.W.3d 802, 813 (Tex. 2020) (orig. proceeding) (per curiam); *In re Office of Att'y Gen.*, 257 S.W.3d 695, 698 (Tex. 2008) (orig. proceeding) (per curiam); *see also In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 207 (Tex. 2002) (orig. proceeding).

Because relators may not appeal the temporary restraining order and this case involves important matters of public concern which are time-sensitive, we conclude that an appeal after any temporary injunction is entered would not provide relators with an adequate remedy. *See In re Abbott*, 601 S.W.3d at 813; *In re Office of Att'y Gen.*, 257 S.W.3d at 698; *In re Turner*, 558 S.W.3d 796, 801 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). We sustain relators' sixth issue. Having done so, we need not reach relators' remaining issues.

18

## VI. CONCLUSION

This Court, having examined and fully considered the petition for writ of mandamus, the record, the response, and the applicable law, is of the opinion that relators have met their burden to obtain mandamus relief. Accordingly, we lift the stay previously imposed in this case. We conditionally grant the petition for writ of mandamus, and we direct the trial court to vacate the temporary restraining order immediately. It was void and had no effect. We are confident that the trial court will comply, and the writ will issue only if the trial court fails to do so.

JAIME TIJERINA
Justice

Delivered and filed on the
26th day of October, 2022.