**Opinion issued December 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00957-CV

———————————

## IN RE DAVID A. CHAUMETTE, Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## O P I N I O N

Relator David A. Chaumette requests habeas corpus relief from the trial court's October 11, 2013 "Amended Order Holding Defendant David Chaumette in Contempt and for Commitment to County Jail".[1]  Because we conclude that

---

[1]  The underlying case is *Black Sigma, LLC v. John P. Benkenstein, David A. Chaumette, Howard F. Cordary, Jr., and Michael P. Robinson*, cause number 64769, pending in the 23rd District Court of Brazoria County, Texas, the Honorable Ben Hardin presiding.

Relator is entitled to habeas relief, we grant his petition for writ of habeas corpus and order him discharged from custody.

## Background

The underlying suit involved the foreclosure of real property located in Brazoria County, Texas. In 2011, real party in interest, Black Sigma, LLC, sought a temporary injunction to prevent Michael Robinson, the third-party defendant in the underlying suit, from conducting a trustee's sale of the property.

On August 22, 2011, the trial court conducted a hearing on Black Sigma's request for a temporary injunction. At the hearing, Black Sigma presented the testimony of one of its managing members and proffered 17 exhibits into evidence in support of its request for injunctive relief. When Black Sigma had finished offering its evidence, the trial court stated that it had to cut the hearing short without hearing Robinson's evidence because it needed "to get back to [its] criminal docket." The court stated that Black Sigma had presented sufficient evidence and granted Black Sigma's request for the temporary injunction against Robinson. Robinson's attorney, Michael Bannwart, protested, indicating that he wanted to offer evidence on Robinson's behalf in defense of the temporary-injunction request; however, the trial refused to allow Bannwart to offer any evidence at the hearing.

2

On September 1, 2011, the trial court signed an order granting the temporary injunction. The order provided, in part, as follows:

> The Court, having held a hearing and received evidence from Plaintiff requesting injunctive relief and argument of counsel, if any, is of the opinion that Plaintiff's application has merit and an injunction should be and is hereby GRANTED.
>
> The Court finds:
>
> 1. Plaintiff has a probable right on final trial to the relief that it seeks;
>
> 2. Plaintiff will suffer irreparable injury for which he has no legal remedy if this injunction is not granted.
>
> IT IS, THEREFORE, ORDERED that Michael P. Robinson, Defendant in this cause and any alternate trustee appointed by him, Robinson's agents, servants, employees, and attorneys and all persons in active concert or participation with him be temporarily and/or permanently enjoined from conducting a foreclosure sale as substitute trustees on September 6, 2011 or anytime during the pendency of this case or until further order of the Court[.]

At the bottom of the order, the trial court made a hand-written notation, indicating that it would conduct a hearing on September 19, 2011, at which Robinson could present evidence "to persuade the Court to dissolve this injunction."

On September 19 and 22, 2011, the trial court conducted two more hearings at which Robinson was permitted to offer evidence regarding Black Sigma's request for temporary injunction. On October 7, 2011, the trial court signed an amended temporary-injunction order, which "relate[d] back to, the Order granting temporary injunction of September 1, 2011."

3

Robinson filed an interlocutory appeal from the amended temporary injunction order, bearing appellate cause number 01–11–00917–CV. In that appeal, Black Sigma filed a "Motion for Contempt and for Referral to the Trial Court to Enforce Temporary Injunction." Black Sigma claimed that Relator, among others, should be held in contempt for violating the trial court's temporary injunction orders. In its motion, Black Sigma asserted that Relator, on September 6, 2011, while acting as substitute trustee, took bids as part of a substitute trustee's sale on the Brazoria County property and transferred the property by substitute trustee's deed in violation of the trial court's temporary-injunction orders. With respect to that motion, this Court issued an "Order of Abatement and Referral of Enforcement Proceeding to the Trial Court," which referred the enforcement proceeding of the temporary injunction orders to the trial court for that court to hear evidence and grant appropriate relief. The order also abated the interlocutory appeal.

The trial court commenced civil and criminal contempt proceedings regarding whether Relator's conduct relating to the sale of the Brazoria County property violated the injunctive orders. On November 19, 2012, the trial court found Relator guilty of civil contempt for violating trial court's orders in the following manner:

4

1. By conducting a substitute trustee's sale on September 6, 2011 as described in the substitute trustee's deed entered into evidence, in violation of this Court's Order Granting Temporary Injunction of September 1, 2011; and

2. By executing and recording said substitute trustee's deed in violation of this Court's Order Granting Temporary Injunction of September 1, 2011, and Amended Order Granting Temporary Injunction of October 7, 2011.

The contempt order further provided that Relator "shall be confined in the Brazoria County Jail until he purges himself of contempt by executing and recording a document in form acceptable to the Court, vacating the said substitute trustee's deed, effective September 6, 2011."

On October 3, 2013, Relator attempted to purge himself of contempt by filing a "Rescission of Foreclosure Sale" in the real property records and notifying the trial court that he had done so. The trial court, however, found Relator's "Rescission of Foreclosure Sale" to be unacceptable.

On October 7, 2013, the trial court presented Relator with an "Order and Declaratory Judgment on Amended Motion to Vacate Substitute Trustee's Deed," as a means of reversing the September 6, 2011 substitute trustee's sale. The order required Relator to acknowledge, by signature, approval of both the substance and form of the proposed order. The trial court also presented Relator with a document entitled "Rescission of Deed," which the trial court ordered relator to execute. The

5

signed order, along with the "Rescission of Deed," and other documents, were to be returned to the trial court by November 4, 2013.

Relator asserted that he could not sign the trial court's proposed order or the Rescission of Deed because they contained inaccuracies. Relator attempted to execute such documents, in a form with which Relator was comfortable; however, the trial court did not find Relator's attempt to be sufficient.

On November 8, 2013, the trial court issued a capias for Relator's arrest based on the trial court's November 19, 2012 civil contempt order. Relator filed a petition for writ of habeas corpus with this Court, bearing appellate cause number 01–13–00964–CV.[2] We granted Relator's petition for writ of habeas corpus, holding that the civil contempt order was void because "[the] purging condition [did] not clearly or specifically notify relator of the action he needs to take to purge himself of contempt."[3] *In re Chaumette*, 439 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

---

[2]    We take judicial notice of the record in that original habeas proceeding and of the record in the interlocutory appeal of the temporary-injunction order. *See In re Carrington*, 2014 WL 793990, at *3 (Tex. App.—Amarillo Feb. 25, 2014, orig. proceeding). (explaining that appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties).

[3]    The trial court also held Robinson's attorney, Anthony Bannwart, in civil contempt of the September 1, 2011 temporary-injunction order. Bannwart filed a petition for writ of habeas corpus in this Court for habeas relief. We granted the petition, holding, as we did with respect to the civil-contempt order against Relator, that the purging provision of the trial court's contempt order was not

6

The criminal contempt proceedings against Relator were conducted separately from the civil contempt proceedings in October 2013. At the end of a two-day hearing, the trial court found Relator in criminal contempt of the September 1, 2011 temporary-injunction order. The trial court signed its "Amended Order Holding Defendant David Chaumette in Contempt and for Commitment to County Jail" on October 11, 2013. The order provided,

> After considering the record and hearing the evidence and arguments of counsel, the Court finds that this Court has jurisdiction to issue this Order; that David A. Chaumette was afforded proper notice of this hearing; that David A. Chaumette had notice of this Court's Order Granting Temporary Injunction of September 1, 2011. The Court further finds that David A. Chaumette has violated this Court's Orders as follows:
>
> 1. By conducting a substitute trustee's sale on September 6, 2011 . . . in violation of this Court's Order Granting Temporary injunction of September 1, 2011. On Count One the Court sentences Contemner to 45 days in the Brazoria County Jail and fines Contemner the sum of $500.00; and
>
> 2. By executing and recording said substitute trustee's deed, dated February 14, 2012 . . . in violation of this Court's Order Granting Temporary Injunction of September 1, 2011. On Count Two the Court sentences Contemner to 45 days in the Brazoria County Jail.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that David A. Chaumette is in contempt of this Court for the above described violations of this Court's Orders.

---

sufficiently specific. *In re Bannwart*, 439 S.W.3d 417, 421–22 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that David A. Chaumette shall be confined in the Brazoria County Jail for a total of 45 days, for each violation, to be served concurrently, and pay a total of $500.00 in fines. A personal recognizance bond in the amount of $1,000.00 is hereby set. If David A. Chaumette has not filed a writ by October 25, 2013 at 12:00 noon, the bond is revoked and David A. Chaumette is to report to the Brazoria County Jail.

Relator filed this application for writ of habeas corpus, challenging the trial court's October 11, 2013 order of criminal contempt. Among his arguments, Relator asserts that the contempt order is void because the underlying September 1, 2011 temporary injunction is void based on its noncompliance with the Texas Rules of Civil Procedure.[4]

## Scope and Standard of Review

The Supreme Court of Texas has broadly defined contempt as "'disobedience to or disrespect of a court by acting in opposition to its authority'" and observed that contempt is "'a broad and inherent power of a court.'" *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding) (citing *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding); *Ex parte Browne*, 543 S.W.2d 82, 86 (Tex. 1976) (orig. proceeding)). However, the supreme court also recognized,

---

[4] The interlocutory appeal of the trial court's temporary injunction order was voluntarily dismissed on July 22, 2014. *Robinson v. Black Sigma, LLC*, No. 01–11–00917–CV, 2014 WL 3589822, at *1 (Tex. App.—Houston [1st Dist.] July 22, 2014, no pet.) (mem. op.).

8

> [D]espite the breadth of a court's contempt power, we have warned it is a tool that should be exercised with caution. As the Court of Criminal Appeals has explained, "[c]ontempt is strong medicine"— the alleged contemnor's very liberty is often at stake—and so it should be used "only as a last resort."

*Id.* (internal citations omitted).

A writ of habeas corpus is available in this Court to review a contempt order signed by a lower court confining a contemnor. *See In re Long*, 984 S.W.2d 623, 625 (Tex. 1999); *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967). The remedy [of habeas corpus] is in the nature of a collateral attack and its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully imprisoned." *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). In a habeas-corpus proceeding, the order or judgment challenged is presumed to be valid until the relator has discharged his burden of showing otherwise. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). For the relator to be entitled to release from custody, "the trial court's order of commitment must be void, either because it was beyond the power of the court or because it deprived the relator of his liberty without due process of law." *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980). A court will issue a writ of habeas corpus if the order underlying the contempt order is void or if the contempt order itself is void because "one may not

be held guilty of contempt for refusing to obey a void order." *Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983); *see Ex parte Gordon*, 584 S.W.2d at 688.

## Analysis

Relator asserts that the contempt order is void because the September 1, 2011 temporary injunction underlying the contempt order is void for failing to comply with the requirements of Texas Rule of Civil Procedure 683.

The Supreme Court of Texas has made clear that "[t]he requirements of Rule 683 are mandatory and must be strictly followed." *Interfirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). "When a temporary injunction order does not adhere to the requirements of Rule 683 the injunction order is subject to being declared void and dissolved." *Id.*; *see Qwest Commc'ns. Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000).

Rule 683 requires that an "order granting an injunction . . . shall set forth the reasons for its issuance[.]" TEX. R. CIV. P. 683. Rule 683 indicates that the trial court must set forth specific reasons, not merely conclusory statements, in the order granting temporary injunctive relief. *Id.* (requiring court's order granting injunctive relief to "be specific in terms"). In this respect, the Supreme Court of Texas "interpret[s] the Rule to require . . . that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right

will be endangered if the writ does not issue." *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 261 S.W.2d 549, 553 (Tex. 1953); *accord State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971) ("Under Rule 683 . . . it is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered.").

"'[T]he obvious purpose of [Rule 683] is to adequately inform a party of what he is enjoined from doing *and the reason why he is so enjoined.*'" *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.) (quoting *Schulz v. Schulz*, 478 S.W.2d 239, 244–45 (Tex. Civ. App.—Dallas 1972, no writ)) (emphasis added). For this reason, the order itself must contain the reasons for its issuance. *See Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Group Holdings, Inc.*, 374 S.W.3d 488, 495 (Tex. App.—Dallas 2012, pet. denied) ("Even if a sound reason for granting relief appears elsewhere in the record, the Texas Supreme Court has stated in the strongest terms the rule must be followed."). The explanation must include specific reasons and not merely conclusory statements. *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56–57 (Tex. App.—San Antonio 2010, no pet.). Mere recitals regarding harm are insufficient. *See AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Here, the only part of the September 1, 2011 temporary-injunction order that can be construed as setting forth the reasons for its issuance reads as follows: "The

11

Court finds . . . Plaintiff will suffer irreparable injury for which he has no legal remedy if this injunction is not granted." A statement indicating only that a plaintiff will "suffer irreparable injury for which he has no legal remedy" if injunctive relief is not granted does not comply with the specificity requirements of Rule 683. *See, e.g., El Tacaso*, 356 S.W.3d at 747 (holding that temporary-injunction order's simple recitation of conclusory statement that plaintiff "will suffer an irreparable injury for which it has no other adequate legal remedy" does not satisfy Rule 683's requirement that a temporary injunction order specify reasons why plaintiff will suffer irreparable harm for which there is no adequate remedy at law); *Kotz*, 319 S.W.3d at 56–57 (holding that an order stating that plaintiffs "will suffer irreparable injury in their possession and use of the Subject Property in the event that the requested injunctive relief is not granted, that they have no adequate remedy at law, and that the requested injunctive relief is necessary to preserve the status quo pending final trial" to be insufficient); *AutoNation*, 186 S.W.3d at 581 (determining that mere recital of "irreparable harm" does not meet Rule 683's specificity requirements); *Monsanto Co. v. Davis*, 25 S.W.3d 773, 788 (Tex. App.—Waco 2000, pet. denied) (concluding that a temporary injunction order was insufficiently specific where it stated that plaintiffs "will suffer probable injury"); *Byrd Ranch, Inc. v. Interwest Sav. Assoc.*, 717 S.W.2d 452, 453–55 (Tex. App.—Fort Worth 1986, no writ) (concluding that an

order stating that the plaintiff "will suffer irreparable harm for which it has no adequate remedy at law" was insufficiently specific).

We conclude that the language in the September 1, 2011 temporary-injunction order does not comply with the requirements of Rule 683 because it does not provide specific reasons why injury will result in the absence of a temporary injunction. We further conclude that the temporary injunction's non-compliance with Rule 683 renders it void. *See Qwest Commc'ns.*, 24 S.W.3d at 337; *Interfirst Bank*, 715 S.W.2d at 641.

In its brief, Black Sigma asserts that a failure of a trial court's injunctive order to meet the requirements of Rule 683 renders the injunction merely voidable or erroneous and not void. We disagree.

A similar argument was raised and rejected in *In re Krueger*, No. 03–12–00838–CV, 2013 WL 2157765, at \*9 n.7 (Tex. App.—Austin May 16, 2013, orig. proceeding). There, the relator was held in criminal contempt for violating a temporary-injunction order. *See id.* at \*2. The appellate court granted habeas relief on the basis that the temporary injunction was void because it failed to comply with Rule 683's specificity requirements. *Id.* at \*9.

The real party in interest had asserted that a failure to comply with the specificity requirements of Rule 683 rendered the temporary injunction merely voidable but not void. *See id.* at \*9 n.7. In rejecting this argument, the *Krueger*

13

court noted that the Supreme Court of Texas has reiterated a number of times that an injunction that fails to comply strictly with the requirements of Rule 683, and other rules of civil procedure, is subject to being declared void. *Id.* at *9 n.7 (citing *In re Office of Attorney Gen.,* 257 S.W.3d 695, 697–98 (Tex. 2008); *Qwest Commc'ns*, 24 S.W.3d at 337; *Interfirst Bank San Felipe*, 715 S.W.2d at 641; *Lancaster v. Lancaster*, 291 S.W.2d 303, 308 (Tex. 1956)). The *Krueger* court also cited *In re Garza*, 126 S.W.3d 268, 271–73 (Tex. App.—San Antonio 2003, orig. proceeding). *Id.* In *Garza*, the San Antonio Court of Appeals, which, when rejecting a similar argument, had observed, "If the supreme court had meant that such a [non-compliant] temporary injunction was voidable, we feel certain it would have used the word 'voidable.' Instead, the court has repeatedly used the word 'void.'" *In re Garza*, 126 S.W.3d 268, 271–73 (Tex. App.—San Antonio 2003, orig. proceeding).

We note that the Supreme Court of Texas, in *Ex Parte Lesher*, granted habeas relief to a relator, who had been held in contempt for violating a temporary restraining order, which, like here, had ordered the relator not to sell certain real property at a scheduled sale. 651 S.W.2d 734, 736 (Tex. 1983). The supreme court held the temporary-restraining order was void "for the reason that no bond had been required by the trial judge as a condition precedent to the issuance of the injunction" as required by Rule of Civil Procedure 684. *Id.* The supreme court

14

granted the habeas relief because the temporary-restraining order's non-compliance with Rule 684 rendered it to have no legal effect; the court held that such an order "will not support an order of contempt." *Id.*

Seven years later, the supeme court, relying on *Lesher¸* also granted habeas relief in *Ex parte Jordan*, 787 S.W2d. 367, 368 (Tex. 1990). The court again held that a temporary-restraining order, which did not satisfy Rule 684's bond requirement, was void and could not support a contempt order. *Id.* Although *Lesher* and *Jordan* involved non-compliance with Rule 684, and not with Rule 683, as here, they show that an order of contempt cannot be supported by a violation of an order that is void for failing to comply with the Rules of Civil Procedure governing injunctive relief. *Cf. In re Krueger*, 2013 WL 2157765, at *9 (granting habeas relief on the following basis: "[T]he first temporary injunction violates the specificity requirements of Rule 683 and is, accordingly, void. Consequently, the order finding Krueger in contempt for allegedly violating that injunction is also void.").

**Conclusion**

We hold that the September 1, 2011 temporary-injunction order violates the specificity requirements of Rule 683 and is, accordingly, void. Consequently, the order holding Relator in criminal contempt for allegedly violating that injunction is also void. *See Shaffer*, 649 S.W.2d at 301–02; *In re Krueger*, 2013 WL 2157765,

at *9; *see also Lesher*, 651 S.W.2d at 736.  We grant Relator's petition for writ of habeas corpus, vacate the trial court's criminal contempt order, and order Relator discharged from custody.


                                        Laura Carter Higley
                                        Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.