**Opinion issued August 26, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00465-CV**

———————————

**TPLC29 LLC; TP1488 LLC; LINDSEY INTERESTS, L.L.C.; TPSTORAGE LLC; AND LINDSEY COMMERCIAL PROPERTIES LLC, Appellants**

**V.**

**LOCK AWAY HWY 105 WEST, LLC; PACIFIC RELIANT ONE, LLC; VICTORIA DRIVE, LLC; LOCK AWAY FM 1488, LLC; BRUNDAGE/CLAUSON, LLC; LOCK AWAY LITTLE EGYPT ROAD, LLC; AND STRAT PROPERTY MANAGEMENT, INC., Appellees**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-88171**

---

**MEMORANDUM OPINION**

This interlocutory appeal arises from a commercial dispute between

Appellants TPLC29 LLC, TP1488 LLC, Lindsey Interests, L.L.C., TPStorage LLC,

and Lindsey Commercial Properties LLC and Appellees Lock Away Hwy 105 West, LLC, Pacific Reliant One, LLC, Victoria Drive, LLC, Lock Away FM 1488, LLC, Brundage/Clauson, LLC, Lock Away Little Egypt Road, LLC, and Strat Property Management, Inc. Appellees sought an application for a temporary injunction preventing Appellants from among other things, foreclosing on three commercial properties and contacting and collecting rental payments from the tenants of the businesses located on those properties.

In four issues, Appellants argue (1) the temporary injunction order is void because it fails to satisfy the requirements of Rule 683 of the Texas Rules of Civil Procedure, (2) the trial court abused its discretion in granting the temporary injunction because Appellees failed to establish a probable, imminent, and irreparable injury and instead only established monetary damages capable of calculation, (3) the trial court abused its discretion in granting the temporary injunction because Appellees failed to establish they had a probable right to relief on the merits of their claims against Appellants, and (4) even if Appellees met their burden, the trial court nevertheless abused its discretion in granting the temporary injunction because Appellees admitted to fraud, and thus their request for injunctive relief is barred by their unclean hands as a matter of law.

Because the temporary injunction order does not comply with Rule 683 of the Texas Rules of Civil Procedure, we declare the order void, we dissolve the injunction, and we remand the case to the trial court for further proceedings.

## Background[1]

This appeal arises from a dispute involving three commercial and self-storage properties: (1) The Tall Pines-HWY 105 property ("105 Property"), (2) The Tall Pines-FM 1488 property ("1488 Property"), and (3) The Tall Pines-Little Egypt property ("Little Egypt Property") (collectively, the "Properties"). The Properties contain both self-storage and commercial office space.

Donald Clauson is the owner, operator, and managing member of Appellees Lock Away Hwy 105 West, LLC, Pacific Reliant One, LLC, Victoria Drive, LLC, Lock Away FM 1488, LLC, Brundage/Clauson, LLC, and Lock Away Little Egypt Road, LLC. He is also the owner, operator, president, chief executive officer, and 50% owner of Strat Property Management, Inc.

Curtis Lindsey is the owner and operator of Appellants TPLC29 LLC, TP1488 LLC, Lindsey Interests, L.L.C., TPStorage LLC, and Lindsey Commercial Properties LLC.

---

[1] The underlying dispute involves a complicated commercial transaction, the details of which are not necessary for the Court to expound upon for purposes of this opinion.

3

In 2021, Clauson, on behalf of Strat Property Management, Inc. ("Strat") and Lock Away Hwy 105 West, LLC, Pacific Reliant One, LLC, Victoria Drive, LLC, Lock Away FM 1488, LLC, Brundage/Clauson, LLC, and Lock Away Little Egypt Road, LLC (collectively, "Owners"), and Lindsey, on behalf of TPLC29 LLC ("105 Developer"), TP1488 LLC and Lindsey Interests, L.L.C. ("1488 Developers"), and TPStorage LLC ("Little Egypt Developer," collectively with 105 Developer and 1488 Developers, the "Developers"), entered into a series of related agreements for the sale and development of the Properties. Pursuant to the agreements, the Owners purchased the Properties from the Developers for a total of $111,000,000 ("Purchase Price") and the Developers agreed to develop structures and other improvements on the Properties. The Owners paid the $27,000,000 cash portion of the Purchase Price and they borrowed the remaining $84,000,000 balance from the Developers.

In conjunction with the sale of the Properties, Industry State Bank loaned $75,000,000 to the Developers to finance the construction of certain buildings and other improvements to their respective properties, as evidenced by promissory notes exectued by the 105 Developer, the 1488 Developers, and the Little Egypt Developer in favor of Industry Bank, which were secured by a deed of trust for each property.

Lock Away HWY 105 West, LLC, Pacific Reliant One, LLC, and Victoria Drive, LLC (collectively, "105 Owners") executed a promissory note ("105 Promissory Note") in favor of the 105 Developer in the principal amount of

4

$28,500,000, secured by a second lien deed of trust. The 105 Owners also entered into a development agreement with the 105 Developer for the construction and developments of improvements to the 105 Property, and a tri-party agreement with the 105 Developer and Industry Bank.

Lock Away FM 1488, LLC and Brundage/Clauson, LLC ("1488 Owners"), executed a promissory note ("1488 Promissory Note") in favor of TP1488 LLC and Lindsey Interests, L.L.C. ("1488 Developers") in the principal amount of $27,000,000, secured by a second lien deed of trust. They also entered into a development agreement with the 1488 Developers, and a tri-party agreement with the 1488 Developers and Industry Bank.

Lock Away Little Egypt Road, LLC ("Little Egypt Owner") executed a promissory note ("Little Egypt Promissory Note") in favor of the Little Egypt Developer in the principal amount of $28,500,000, secured by a second lien deed of trust. It also entered into a development agreement with the Little Egypt Developer, and a tri-party agreement with Little Egypt Developer and Industry Bank.

The purpose of each tri-party agreement was to require Industry Bank's consent to the sale of the 105 Property, the 1488 Property, and the Little Egypt Property by the properties' respective owners to their respective developers and "to establish certain rights and obligations" of the respective owners and developers and with respect to Industry Bank's loans to each respective developer.

5

Soon after the agreements were executed, Clauson, on behalf of the 1488 Owners and the Little Egypt Owner, requested redesigns for the 1488 Property and the Little Egypt Property that, according to Appellants, "required significant modifications and material changes in the types and sizes of improvements to be constructed" by the 1488 Developer and the Little Egypt Developer and for which the 1488 Developer and the Little Egypt Developer would incur additional costs to be paid by the 1488 Owners and the Little Egypt Owner. While the costs for the requested redesigns were pending, work on the Properties continued. The work on the 105 Property was substantially completed by December 2022, and the work on the 1488 Property was substantially completed prior to December 2023. Although the Little Egypt Developer constructed a parking area and covered parking, the Little Egypt Property remains substantially undeveloped.

On April 26, 2023, after months of negotiation concerning the costs associated with the change orders, Lindsey Commercial Properties and Strat executed a letter agreement "regarding change orders, agreements for financing and payment of change orders and other miscellaneous items" ("Lindsey Letter"). Among other provisions, the Lindsey Letter required Strat to "provide monthly updates to [Lindsey Commercial Properties] regarding the refinance of" of the 105 Property and the 1488 Property.

In August 2023, Clauson asked the Little Egypt Developer to stop working on the resign for Little Egypt Property until they could resolve a dispute regarding the change order. In response to Clauson's request, the Little Egypt Developer ceased all work on the development project.

On December 1, 2023, the Developers delivered notices of default with respect to all three Properties alleging that the Owners breached the Lindsey Letter and failed to provide financial information to the Developers as required by the various agreements associated with the Developers' loans to the Owners, including the deeds of trust between the Developers and Industry Bank. The same day, the Developers delivered notices to the Properties' tenants stating that the Owners had defaulted on their loan documents and that the tenants were required to pay to the Developers all rents under their rental agreement. The Developers also delivered those notices to Storable, Inc., the vendor that processed rents at all three Properties for Strat.

On December 11, 2023, the Developers noticed the Properties for foreclosure due to the purported defaults. After receiving the notices of foreclosure sales, the Owners and Strat sued the Developers and Lindsey Management for breach of the development agreements and promissory notes and tortious interference with existing contracts. They also sought declarations regarding the parties' obligations and applied for a temporary restraining order and temporary injunction to halt the

7

foreclosure actions and the Developers' collection of rent from the Properties' tenants.

On December 29, 2023, the trial court issued a temporary restraining order, which the parties later extended by agreement until the temporary injunction hearing was held.

On February 16, 2024, Appellants filed an original answer and affirmative defenses asserting, among other things, that Appellees' claims were barred as a matter of law pursuant to Appellees' unclean hands.

The trial court held the temporary injunction hearing on March 25, 2024.

**Temporary Injunction Order**

On June 3, 2024, the trial court entered the Order Granting Temporary Injunction and Setting Date for Trial on the Merits. The Order includes a series of findings regarding the parties' commercial dispute. In the Order, the trial court found (1) the Owners made Promissory Notes to the Developer in connection with the Owners' purchase of the Properties, (2) the promissory notes are secured by Second Lien Deeds of Trust and are governed by the respective Development Agreements and Tri-Party Agreements, (3) the Developer distributed notices to the Properties' commercial tenants and the management office of the storage business asserting the Developer was entitled to collect rent because the Owners had defaulted on the promissory notes, (4) the Developer had collected at least $16,500 in rent

8

from the Properties' commercial tenants, (5) the Developer notified the Owners that it had accelerated the promissory notes' maturity dates and the Properties would be sold at a public foreclosure sale on January 2, 2024, (6) the Owners disputed they had defaulted on the promissory notes and claimed the Developer breached the development agreements by making "false statements to the Owners in connection with its work at the Properties," and (7) the Owners "claim[ed] that Defendants [had] wrongfully interfered with Owners' contracts with the tenants at the Properties and with Storable, Inc. because there is no default by the Owners that would entitle the Developer to seek rents from the tenants of the Properties or from Storable, who process[es] rent payments for the Owners from storage tenants at the Properties."

The Order states that Appellants are "prohibited from foreclosing on" the Properties, "undertaking any attempts to foreclose" on the Properties, "or otherwise taking possession of, transferring, or selling" the Properties. The Order also prohibited Appellants from:

> d. . . . accelerating the 105 Promissory Note's maturity date due to any alleged failure by the 105 Owners to provide financial information and/or rent rolls for the 105 Property to the 105 Developer.
>
> e. . . . accelerating the 1488 Promissory Note's maturity date due to any alleged failure by the 1488 Owners to provide financial information and/or rent rolls for the 1488 Property to the 1488 Developer.
>
> f. . . . accelerating the 1488 Promissory Note's maturity date in connection with any allegedly unpaid change order work at the 1488 Property under the April 26, 2023 letter agreement between Strat Property Management and Lindsey Commercial Properties.

9

g. . . . accelerating the Little Egypt Promissory Note's maturity date due to any alleged failure by the Little Egypt Owner to provide financial information and/or rent rolls for the Little Egypt Property to the Little Egypt Developer.

h. . . . accelerating the Little Egypt Promissory Note's maturity date in connection with any allegedly unpaid change order at the Little Egypt Property under the April 26, 2023 letter agreement between Strat Property Management and Lindsey Commercial Properties.

i. . . . making any contact with the tenants of the 105, 1488, and Little Egypt Properties; or with Storable, Inc. concerning renter leases at the Properties[; and].

j. . . . soliciting or accepting any rent payments from the tenants of the 105, 1488, and Little Egypt Properties or from Storable, Inc. for tenants at the Properties.

The trial court further ordered that Appellants:

k. . . . shall segregate and hold any rent payments received from the tenants of the 105, 1488, and Little Egypt Properties, or from Storable, Inc. for tenants at the Properties, throughout the pendency of this litigation.

1. . . . shall notify Plaintiffs in writing of their receipt of any rent payments from the tenants of the Properties, or from Storable, Inc. for tenants at the Properties, within three days of receiving such payment.

The Order further states:

Based on the facts set forth in Plaintiffs' Application, the evidence presented at the hearing on Plaintiffs' Application for a Temporary Injunction, and the arguments of counsel, Plaintiffs have shown that unless this order is immediately entered without notice to the Defendants, the Owners will suffer irreparable injury in the form of loss of the unique Properties, loss of goodwill, and loss of business reputation because no other legal remedy can be obtained and effected before the injury occurs that cannot be compensable through monetary relief alone. In turn, injunctive relief is appropriate.

This interlocutory appeal followed.[2]

## Temporary Injunctions

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Id.* (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)). To obtain a temporary injunction, an applicant need not establish that it will prevail upon a final trial on the merits, but it must plead and prove that it (1) has a cause of action against the opposing party; (2) has a probable right on final trial to the relief sought; and (3) faces probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Hoist Liftruck Mfg., Inc. v. Carruth–Doggett, Inc.*, 485 S.W.3d 120, 122 (Tex. App.— Houston [14th Dist.] 2016, no pet.).

Rule 683 governs the form and scope of injunctions and temporary restraining orders. TEX. R. CIV. P. 683. Although the decision whether to grant or deny a request for a temporary injunction is committed to the sound discretion of the trial court, once the court decides to grant injunctive relief, the order itself must comply with the requirements of Rule 683. *See Hoist Liftruck Mfg.*, 485 S.W.3d at 122. The

---

[2]    *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (authorizing interlocutory appeals from order granting temporary injunction).

11

requirements of Rule 683 are mandatory and must be strictly followed. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000). A temporary injunction order that violates Rule 683 "is subject to being declared void and dissolved." *Id.*; *see also Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 370 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

Pursuant to Rule 683, every order granting a temporary injunction must, among other things, "set forth the reasons for its issuance" and "shall be specific in terms." TEX. R. CIV. P. 683; *see also El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.) ("A trial court's order stating its reasons for granting a temporary injunction must be specific and legally sufficient on its face and not merely conclusory."); *Clark*, 651 S.W.3d at 374 (limiting analysis to four-corners of temporary injunction order and holding order did not comply with Rule 683).[3] A temporary injunction order must provide "the reasons the trial court

---

[3] Texas Rule of Civil Procedure 683 states in its entirety:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

> Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

believes irreparable injury will result if an injunction preserving the status quo pending a trial on the merits is not granted." *Clark*, 651 S.W.3d at 370; *see also El Tacaso*, 356 S.W.3d at 744 (stating temporary injunction order must state "the reasons the court deems it proper to issue the injunction, including the reasons why the applicant will suffer injury if the injunctive relief is not ordered"). A trial court's description of the reasons why an applicant will suffer irreparable injury will vary from case to case because each case in which a temporary injunction is sought presents a unique set of facts. *El Tacaso*, 356 S.W.3d at 747–48.

Conclusory explanations as to why a party will suffer irreparable harm do not satisfy Rule 683. *See Clark*, 651 S.W.3d at 374; *see also In re Chaumette*, 456 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (stating temporary injunction order must "include specific reasons and not merely conclusory statements"). A statement is conclusory if it does not articulate the factual basis on which it rests, effectively insisting that the reader accept the writer's say-so without explanation. *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 389 & n.32 (Tex. 2008) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"). A trial court must provide a factual basis explaining the reason for its finding that the applicant will suffer a probable, imminent, and irreparable

---

TEX. R. CIV. P. 683.

13

injury unless the temporary injunction is issued, and it must connect the enjoined actions to the irreparable injury. *See El Tacaso*, 356 S.W.3d at 747 (holding temporary injunction order violates Rule 683 when "the order provides no nexus between the actions restrained and an irreparable injury to [the applicant] that cannot be adequately compensated"); *see also Kotz v. Imperial Cap. Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.) ("The trial court must set forth specific reasons, not merely conclusory statements, in the order granting temporary injunctive relief.").

### Texas Rule of Civil Procedure 683

In their first issue, Appellants argue that the Order is void because it fails to set forth in specific terms the reasons the trial court believes irreparable injury will result absent an injunction in violation of Rule 683. Citing to section (h) of the Order, Appellants contends the Order "provides a single conclusory statement with regard to [Appellees'] alleged irreparable harm," and wholly fails to specify why irreparable injury in the form of loss of the Properties, loss of reputation, and loss of goodwill would result if injunctive relief was not granted. Appellants argue that the mere fact Appellees face the prospect of losing their interest in the Properties due to foreclosure does not mean that Appellees cannot be adequately compensated with monetary damages for the loss of their commercial real estate. They argue that even

14

in cases in which real property interests are at stake, an order granting a temporary injunction must still comply with the specificity requirements of Rule 683.

Appellees argue that the Order complies with Rule 683 because the statement "the Owners will suffer irreparable injury in the form of loss of the unique Properties, loss of goodwill, and loss of business reputation," is similar to other injunctive orders courts have found complied with Rule 683, and the Owners' loss of the Properties due to foreclosure is a "unique (and sufficiently irreparable) injury" that warrants injunctive relief. Appellees further contend that in addition to section (h), the Order contains additional fact findings regarding Appellees' loss of goodwill and business reputation, and such findings, independently or together with the loss of the Properties, constitute legally sufficient irreparable injury.

The Order includes a series of findings regarding the parties' commercial dispute, including findings that the Developer distributed notices to the Properties' commercial tenants and the management office of the storage business asserting the Developer was entitled to collect rent because the Owners had defaulted on the promissory notes, that the Developer notified the Owners that it had accelerated the promissory notes' maturity dates and the Properties would be sold at a public foreclosure sale on January 2, 2024, and that the Owners "claim that Defendants have wrongfully interfered with Owners' contracts with the tenants at the Properties and with Storable, Inc. because there is no default by the Owners that would entitle

15

the Developer to seek rents from the tenants of the Properties or from Storable, who process rent payments for the Owners from storage tenants at the Properties."

The Order also lists twelve separate injunctions against Appellants, including prohibiting Appellants from "foreclosing on" the Properties, "undertaking any attempts to foreclose" on the Properties, "or otherwise taking possession of, transferring, or selling" the Properties. Appellants are also prohibited from accelerating the maturity dates of the 105 Promissory Note, the 1488 Promissory Note, and the Little Egypt Promissory Note, making any contact with the Properties' tenants or Storable, Inc. concerning renter leases at the Properties, and "soliciting or accepting any rent payments" from the Properties' tenants. The Order also compels Appellants to "segregate and hold any rent payments" they receive from any of the Properties' tenants and notify Appellees in writing if Appellants receive any rent payments.

With regard to the irreparable harm requirement, section (h) of the Order states that the Owners will "suffer irreparable injury in the form of loss of the unique Properties, loss of goodwill, and loss of business reputation" if the injunction is not entered and the Owners will suffer theses injuries "because no other legal remedy can be obtained and effected before the injury occurs that cannot be compensable through monetary relief alone."

To establish irreparable injury, an applicant "must show that it cannot be 'adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard.'" *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (quoting *Butnaru*, 84 S.W.3d at 204). The loss of an interest in real property, loss of reputation, and loss of goodwill can each support an award of injunctive relief. *See Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Threatened injury to a business's reputation and good will with customers is frequently the basis for temporary injunctive relief."); *Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 334 (Tex. App.—Austin 2009, pet. denied) ("Irreparable harm for purposes of a temporary injunction may include noncompensable injuries such as a 'company's loss of goodwill, clientele, marketing techniques, office stability and the like.'") (quoting *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)); *Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N Prop Inv.'s, LLC*, 481 S.W.3d 336, 350 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (stating temporary injunction appropriate to block foreclosure of real property); *Guardian Sav. & Loan Ass'n v. Williams*, 731 S.W.2d 107, 108–09 (Tex. App.—Houston [1st Dist.] 1987, no writ) (holding business losses as well as unique nature of real estate justified enjoining foreclosure of commercial properties).

Injuries to a business' reputation and goodwill, however, are not necessarily irreparable, and such losses can be compensated with monetary damages depending on the circumstances. *See Intercontinental Terminals*, 354 S.W.3d at 895 (stating goodwill and reputational injuries "are not categorically irreparable"); *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 796 n.2 (Tex. App.—Dallas 2008, no pet.) (stating "any damage to Collins's reputation is compensable through monetary damages"); *Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d 17, 29 (Tex. App.—Texarkana 2018, pet. denied) (stating monetary damages are available to compensate party for injury to its goodwill) (citing *Tex. & P. Ry. Co. v. Mercer*, 127 Tex. 220, 90 S.W.2d 557, 560 (1936)). The same is true for the loss of real property. *See Kotz*, 319 S.W.3d at 58 (stating that although "every piece of real estate is unique" and property's "uniqueness may . . . constitute some evidence of an irreparable injury," "that alone is not conclusive"); *In re Stark*, 126 S.W.3d 635, 641 (Tex. App.—Beaumont 2004, orig. proceeding) (stating "under some circumstances monetary damages afford adequate relief for the loss of real estate and under some circumstances it does not"); *Home Asset, Inc. v. MPT of Victory Lakes Fcer, LLC*, No. 01-22-00441-CV, 2023 WL 3183322, at *4 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.) (mem. op.) ("[E]ven when a lawsuit relates to real estate in some fashion, the trial court is not excused from Rule 683's mandate that a temporary-injunction order explain why irreparable harm will result without an

18

injunction."); *see generally Ugarte v. Hathcock*, No. 10-19-00470-CV, 2022 WL 1256929, at *2 (Tex. App.—Waco Apr. 27, 2022, no pet.) (mem. op.) (rejecting argument applicant established foreclosure of property would result in irreparable injury for which no adequate remedy at law existed based on unique nature of real estate; "While each piece of real estate is unique, an injunction to forestall foreclosure requires more than just the existence of real property—it requires some evidence regarding the unique nature of the property.").

The Order does not explain the basis for the court's finding that in this case monetary damages would be inadequate to compensate the Owners for the loss of the Properties, loss of goodwill, or the damage to their business reputation they would incur if the injunction had not issued. Thus the trial court's finding of irreparable injury—"because no other legal remedy can be obtained and effected before the injury occurs that cannot be compensable through monetary relief alone"—is conclusory. *See Arkoma Basin Expl.*, 249 S.W.3d at 389 n.32 (stating conclusory statement "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based"). Nor does the Order assert that damages associated with such losses cannot be quantified or otherwise measured by a pecuniary standard. *Compare with IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.) (holding injunction set forth sufficient reasons for its issuance where it explicitly stated defendants had data

19

entitled to trade secret protection and were actively using that data to compete with plaintiff, and defendants' product would be priced lower than plaintiff's, which would lead to "incalculable loss of business goodwill"); *Transport Co. of Texas v. Robertson Transports, Inc.*, 261 S.W.2d 549, 553 (Tex. 1953) (holding injunction sufficiently specific when it stated defendant "would interfere with the markets established by the plaintiffs and would probably divert freight tonnage and revenue from the plaintiff" and "that such interference with customers and markets and diversion of freight tonnage and revenues would result in irreparable and inestimable damage to the plaintiffs"); *see, e.g.*, *101 Lexington Tower, LLC v. 830 N. St. Mary's Hotel, Ltd.*, 678 S.W.3d 291, 300–01 (Tex. App.—San Antonio 2023, no pet.) (holding sufficient evidence supported trial court's finding hotel's damages could not be measured by any certain pecuniary standard based on testimony it was "difficult to calculate damages to the [hotel's] reputation and goodwill because the [hotel] had no way of knowing, e.g., (1) whether a complaining guest would come back to the hotel or choose to go elsewhere, or (2) how many prospective guests were choosing to stay in a different hotel because of the online reviews complaining of the [nearby restaurant grill's] exhaust's effects").

Furthermore, to satisfy the requirements of Rule 683, the order must provide a "nexus between the actions restrained and an irreparable injury to [the applicant] that cannot be adequately compensated." *El Tacaso*, 356 S.W.3d at 747. Even

20

assuming the Order sufficiently connects the prohibitions against foreclosure and contacting and collecting rent from tenants, there is nothing in the Order explaining why the trial court believes that the Owners will suffer any form of irreparable injury unless Appellants are required to notify Appellees in writing when Appellants receive any rent payments from the Properties' tenants and "segregate and hold any rent payments" Appellants receive from any tenants, or unless Appellants are prohibited from accelerating the promissory notes' maturity dates. In other words, the Order provides no nexus between this prohibited conduct and an irreparable injury to the Owners for which no other adequate legal remedy exists. *See id.*

Appellees argue that the statement "the Owners will suffer irreparable injury in the form of loss of the unique Properties, loss of goodwill, and loss of business reputation," is similar to injunctive orders courts found complied with Rule 683 in *Transport Company of Texas v. Robertson Transports, Inc.*, 261 S.W.2d 549, 553 (Tex. 1953) and *Kelley v. Ivey*, No. 14-14-00686-CV, 2015 WL 4387941, at *5 (Tex. App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op.). *Robertson* and *Kelley* are distinguishable.

In *Robertson*, the enjoined party argued that the order was invalid because it did not state the reasons for its issuance. In holding the order was valid, the court observed:

> In the case at bar the trial court's order contained [an] express finding
> that the petitioners had made "a proper showing of a probable right and

21

> a probable injury", *and set forth as reasons for the granting of the writ* that if respondent operated under the amended permit "he would interfere with the markets established by the plaintiffs and would probably divert freight tonnage and revenue from the plaintiff" and "that such interference with customers and markets and diversion of freight tonnage and revenues would result in irreparable and inestimable damage to the plaintiffs." This we deem to be a sufficient compliance with the requirements of Rule 683.

261 S.W.2d at 553 (emphasis added). The order in that case thus specifically stated that unless prohibited from doing so, the defendant would interfere in the future with the markets the plaintiffs had created, and the defendant's conduct would not only cause the plaintiffs to lose markets, customers, and revenue, it would also "result in irreparable and *inestimable damage* to the plaintiffs." *Id.* (emphasis added).

Here, Appellants argue the Order is void because it does not explain in specific terms the reasons the trial court believes irreparable injury will result absent an injunction. Unlike in *Robertson*, there is no finding in the Order that the Owners' damages are "inestimable," or otherwise cannot be calculated or monetized. The Order states instead that the injury "cannot be compensated through monetary relief alone" without any indication as to why monetary damages are inadequate or why monetary damages cannot be quantified or measured. *See Cardinal Health*, 106 S.W.3d at 235 (stating irreparable injury requires showing applicant cannot be "adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard") (quoting *Butnaru*, 84 S.W.3d at 204). Furthermore, unlike in *Robertson*, there are no findings in the Order that Appellants will continue

22

to engage in any of the enjoined conduct in the future. At most, the Order merely reflects that Appellants have engaged in such conduct in the past.

In *Kelley*, the appellants obtained a judgment against Willie Ray Kelley, and they obtained a writ of execution to have what they characterized as Willie's interest in Tract 19 sold to satisfy the judgment. *Kelley*, 2015 WL 4387941, at *1. Ivey filed a declaratory judgment action and suit to quiet title, seeking a judgment that she and Guillory were sole owners of Tract 19 and requesting a temporary injunction enjoining the sale of any part of Tract 19. *Id.* at *2. The *Kelley* court, which held that the order granting the temporary injunction which enjoined the appellants "from selling, transferring, conveying or pursuing any action to sale [sic], transfer or convey the property or cloud the title to the property" in dispute satisfied Rule 683, stated:

> The trial court recited that absent injunctive relief, Ivey "probably will be deprived of property she inherited and/or obtained from members of her immediate family and that has been in her family for a number of years. If the Defendants are not enjoined, there is substantial likelihood that Plaintiff's property will be sold, transferred, conveyed and/ or will have the title clouded."

*Id.* at *5. The trial court thus specifically stated that the probable loss of real property or a cloud on its title constituted an irreparable injury, not because it involved an interest in real property, but because the real property at issue had been in the plaintiff's family for a number of years. The loss of real property can support a finding of irreparable harm, but not in all cases, nor does the loss of real property

23

relieve the trial court of its obligations under Rule 683. *See Kotz*, 319 S.W.3d at 58 (stating although real estate's "uniqueness may . . . constitute some evidence of an irreparable injury," "that alone is not conclusive" and observing no authority states "trial court is relieved of the mandatory requirements of Rule 683 in cases involving real estate"); *see also In re Stark*, 126 S.W.3d at 641 (stating that monetary damages may afford applicant "adequate relief for the loss of real estate"). Here, unlike the order in *Kelley*, the trial court did not specifically explain why monetary damages are inadequate to compensate the Owners for loss of the Properties nor did it state any facts concerning the commercial properties which would render monetary damages inadequate.

Appellants argue that the Order is similar to the temporary injunction order in *Kotz*, where the court held the order did not comply with Rule 683. 319 S.W.3d at 58. We agree that the Order is more similar to the order in *Kotz* than to the orders in *Robertson* and *Kelley*. In *Kotz*, Patrick Man and Grace Man sought to enjoin Carole Kotz temporarily from "taking or attempting to take possession of certain commercial real estate, communicating with any tenants of the property, or receiving any rents from the tenants currently occupying the premises under leases held by" the Mans. *Id.* at 55. On appeal, Kotz argued that the order granting the injunction was void because it did not "detail why irreparable injury w[ould] occur if the temporary injunction [was] not granted." *Id.* at 56. The order stated:

24

> The Court finds that Intervenors Patrick Man and Grace Man will suffer irreparable injury in their possession and use of the Subject Property in the event that the requested injunctive relief is not granted, that they have no adequate remedy at law, and that the requested injunctive relief is necessary to preserve the status quo pending final trial.

*Id.* The court observed that, "At most, this language characterizes by what means harm will occur unless Kotz is enjoined from taking possession and use of the subject property—but does not state or explain the reasons *why* irreparable injury will result absent an injunction." *Id.* at 57 (emphasis in original).

Similar to the language in *Kotz,* the trial court's statement that "the Owners will suffer irreparable injury in the form of loss of the unique Properties, loss of goodwill, and loss of business reputation" characterizes the types of injuries the Owners will suffer if injunctive relief is not granted, but it does not state the reasons why such losses will occur, explain why monetary damages are inadequate to compensate the Owners for their losses, or assert that damages associated with such losses cannot be quantified or measured by a pecuniary standard. *See Cardinal Health*, 106 S.W.3d at 235 ("To establish an irreparable injury, the applicant must show that it cannot be 'adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard.'") (quoting *Butnaru*, 84 S.W.3d at 204). *Compare with Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.) (holding injunction was sufficiently specific where it stated business partner's actions prevented other parties "from

25

realizing the significant loan values" in specified properties and significantly impaired their ability to pay amounts owed under promissory note and that their business plan and ability to obtain financing on properties were "adversely affected in a way that cannot be effectively measured in dollars").

Focusing on the four corners of the Order, as we must, we hold that the order does not specifically set forth in specific terms the reasons the trial court believes irreparable injury will result absent an injunction and thus fails to comply with the requirements of Rule 683. *See Clark*, 651 S.W.3d at 374 (limiting analysis to four-corners of temporary injunction order and holding order did not comply with Rule 683). The order is thus void. *Id.*[4]

## Conclusion

Because the Order does not strictly comply with the requirements of Rule 683, we declare the Order void, we dissolve the injunction, and we remand the case to the trial court for further proceedings.[5] We dismiss any pending motions as moot.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

---

[4] Because of our disposition, it is not necessary to address Appellants' remaining issues. *See* TEX. R. APP. P. 47.1.

[5] This dissolution is without prejudice as to future relief the parties may seek.